The complainants are the owners of lands and premises known as 373-375 Hillside avenue, Newark, New Jersey. The defendants are the city of Newark; Frederick Bigelow, superintendent of buildings of the city of Newark, and the board of adjustment of the city of Newark. This matter comes before me on the return of an order to show cause why a preliminary injunction should not be issued restraining the defendants from interfering with complainants' erection of a sixteen-family apartment house on the premises in question, under a building permit issued therefor by the superintendent of buildings. Complainants base their claim for relief on the ground of "vested rights" under the permit of which they allege the city of Newark cannot now deprive them. The controversy arises out of the following state of facts: The premises in question, on June 9th, 1927, were owned by Steinberg Brothers, Incorporated, a corporation. *Page 171 
On that date Paul Steinberg, one of the officers of the company, filed with the superintendent of buildings plans and specifications for a sixteen-family apartment house and applied for a building permit, which was issued on June 16th, 1926, by the building superintendent to Paul and Ben Steinberg. On June 20th, 1927, Steinberg Brothers, Incorporated, conveyed the property in question to Goldsmith Construction Company, and, the bill alleges, assigned the permit to the purchaser and warranted its validity. On September 29th, 1927, Goldsmith Construction Company conveyed the premises and assigned the permit to Kaplan 
Rubin, who, on November 22d 1927, conveyed and assigned to the complainants and warranted the validity of the permit. The contract for this last-mentioned conveyance was made on November 15th, 1927, and between the date of the contract and the date of the conveyance the complainant entered into several contracts for labor and material for the construction of the proposed apartment house. On November 23d 1927, excavation work for building purposes was begun on the premises. This was the first work done under the permit. On the same day, adjoining property owners petitioned the board of adjustment to revoke the permit on the ground that it was issued in violation of the zoning ordinance, and city inspectors stopped the work immediately. On November 25th, 1927, the superintendent of buildings notified complainants to discontinue work under the permit. On December 1st, 1927, the board of adjustment, on notice to Paul and Ben Steinberg, held a hearing on the petition to revoke and passed a resolution directing the building department to stop the work, but did not revoke the permit. No notice of the various assignments of the building permit had been given to the city of Newark and no notice of the hearing was given to the assignees. It is admitted that the zoning ordinance of the city of Newark prohibits the erection of apartment houses to accommodate more than thirteen families in the zone in which the premises here involved are located. The resolution of the board of adjustment directs that work be suspended until the plans and specifications for the proposed apartment house are changed to conform to the requirements of the zoning ordinance. *Page 172 
The permit bears on its face these words: "This permit is subject to all city ordinances."
It is contended that the action of the board of adjustment in holding the hearing and adopting the resolution directing the discontinuance of work pending a change of plans cannot affect the rights of the complainants because they had no notice of the hearing; but in my opinion they were not entitled to such notice, the city of Newark having no notice of any assignment from the persons to whom the permit was originally issued.
It is not denied by complainants that the permit was issued in violation of the zoning ordinance, and it is plain that the superintendent of buildings had neither right nor authority to issue a permit for a sixteen-family apartment house in this zone. The permit was, therefore, void. There can be no "vested rights" under a void permit. To hold otherwise would be to put a premium on dishonesty of city officials charged with the duty of issuing such permits and would open the way for connivance and fraud. The will of the official would then be substituted for the mandate or restriction of legislative enactment, and thus the limitations of zoning acts and ordinances held for naught. In Gibbs v.Belleville, 100 N.J. Eq. 240, I held that the issuance of a temporary permit by an officer whose powers were suspended by the pendency of an appeal to the board of adjustment was illegal and void. I can see no difference in principle between the issuance of a permit by one not authorized to do so and the issuance of a permit by an officer charged with that duty, but for a purpose prohibited by law. The assignees of the building permit here involved must be held to have taken an assignment of the permit with notice of the provisions of the zoning ordinance, and must, therefore, have known that it was issued in violation of that ordinance. They were charged with notice of its illegality, particularly as the permit itself contained the notice that it was issued subject to all city ordinances; "a resort to the general laws relating to the subject, or to ordinances or regulations made pursuant to them," would furnish the complainant with full notice that the permit was unauthorized and subject to revocation *Page 173 
on appeal to the board of adjustment if the permit had been illegally issued. Lowell v. Archambault, 189 Mass. 70;75 N.E. Rep. 65.
Under the provisions of P.L. 1924 ch. 146 p. 326 § 7; 2 Cum.Supp. Comp. Stat. p. 2406-7 —
"Appeals may be taken by any person aggrieved or by any officer, department, board or bureau of the municipality affected by any decision of the administrative officer. Such appeal shall be taken within a reasonable time. * * * An appeal stays all proceedings in furtherance of the action appealed from"
with some exceptions not here important. This act further provides:
"In exercising the above-mentioned powers such board may, in conformity with the provisions of this act, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end have all the powers of the officer from whom the appeal is taken."
Any action of the board of adjustment is subject to judicial review. P.L. 1926 ch. 315 p. 527.
Numerous decisions of this and other states are cited by counsel for complainant in support of the insistment that a preliminary injunction should issue, among which are the following: Montefiore Cemetery Co. v. Newark,130 Atl. Rep. 730; Peerless Oil Co. v. Hague, 132 Atl. Rep. 332; Buffalo v.Chadeayne, 7 N.Y. Supp. 501; Quinn v. Middlesex,140 Mass. 109; 3 N.E. Rep. 204; Hanley v. Cooke, 245 Mass. 563;139 N.E. Rep. 654; Lowell v. Archambault, supra; and, also, the unreported case of Trautwein v. Irvington, Docket 50, p. 484, in which Vice-Chancellor Fielder ordered preliminary restraint and which case is urged as "on all fours" with the instant case.
In Montefiore Cemetery Co. v. Newark, there was a resolution adopted to rescind a cemetery permit granted more than a year before in reliance on which the cemetery company had made expenditures. The supreme court, on certiorari, held that resolution invalid because, if the permit was valid, the company had acquired vested rights which could *Page 174 
not be taken away from it; or, if invalid, the municapility could not, in the summary fashion there attempted, pass judgment on its own act. The court said: "If the grant was in the first place wrongful this could be reviewed and determined in a direct attack upon that proceeding only before some competent tribunal.
(Italics mine.) It was not open to the commissioners in this summary fashion with or without notice to recall their earlier action."
But in the instant case no summary action has been taken by the issuing authority. The issuance of the permit is in process of review by a direct attack before a competent tribunal established by the legislature for that purpose, viz., the board of adjustment. P.L. 1924 ch. 146. One of the purposes of this legislative enactment was to provide a special tribunal for reviewing acts of officers charged with the duty of issuing building permits without resort in the first instance to courts of law, and thus to insure prompt correction of errors which otherwise would be impossible because of the numerous delays incident to technical procedure in the courts.
The question of the validity of this permit is now before the board of adjustment. That board, under the statute referred to, has complete power to act in the premises and may either reverse or modify the order which is under review. Complainants object that the action of the board is not definite and decisive and that it has not revoked the permit; but the fact that it has not is a matter of grace extended to the complainant. The board might have revoked the permit forthwith, but the bill alleges that the resolution directed discontinuance of work only pending a change of plans. If this resolution is invalid, complainants' remedy is by certiorari, the act itself contemplating challenge of an act of this board by certiorari and not by bill in chancery, and the action of the board being expressly subject to judicial review.
It is objected that the appeal to the board of adjustment by adjoining property owners came too late; but the 1924 act referred to directs that appeals be taken within a reasonable time. What may be a reasonable time for an appeal to this board will vary under different circumstances. The appeal would be required in much less time, ordinarily, by the *Page 175 
owner who was refused a permit, or by an official or other person who had full knowledge of the order or act appealed from, than by a citizen or property owner whose first notice was the beginning of work under the permit. In determining what is a reasonable time under varying circumstances, the time should be computed from the date the appellant had notice of the act appealed from. In the instant case the appealing property owners had no notice, so far as is disclosed by the record, until work was begun, and an appeal to the board of adjustment was taken on the same day. Prompter action could not be required.
Peerless Oil Co. v. Hague, supra, is not an authority supporting complainants' bill. It indicates, however, that the complainant has a complete remedy at law. There, it was bymandamus compelling the issuance of an order; here, if the action of the board of adjustment is wrong, the remedy is bycertiorari.
Great stress is laid on the case of Trautwein v. Irvington,supra, said by counsel for complainant to be on all fours with the case sub judice. I have examined the files of that case very carefully and in my judgment it has no application whatever to the instant case. Were it not for the vehemence of counsel in urging it as an authority, I should pass it without further comment. The bill in that case discloses that a building permit was issued May 10th, 1921, and work thereunder immediately begun and continued until June 14th, 1921, when the building, a carpenter shop, was nearly completed. Adjoining property owners complained to the mayor that this shop would be a nuisance, and on June 15th the permit was revoked by resolution of the board of commissioners, the issuing authority, without notice to the complainant. No question was raised as to the validity of the permit and the only complaint made was that the use of the shop after completion would constitute a nuisance. A preliminary injunction was issued, and properly so, for to have upheld the action of the town commissioners would have been to decide in advance of its completion that the shop when completed and in operation would constitute a nuisance. Also, the principle enunciated in Montefiore Cemetery Co. v. Newark, *Page 176 supra, applied. No final injunction or decree was entered in that case and no opinion was filed by the vice-chancellor who heard it.
Hanley v. Cooke, supra, one of the Massachusetts cases cited by complainant, is not an authority in complainants' favor. It held only that a building permit, prior to the exercising of the rights acquired thereunder, was not assignable and would not pass upon a conveyance of the land. In the instant case it is not necessary for me to pass upon the question of the assignability of the permit here involved. The issues may be decided on other grounds.
Quinn v. Middlesex, supra, held only that a license to operate an engine issued by a municipality to an electric light company and under which the engine had been operated, passed to the vendee of the company's real and personal property.
Counsel for complainant, in their brief, quote liberally from the opinion of the Massachusetts court in Lowell v.Archambault, supra, in support of their argument for a preliminary injunction; but excerpts from judicial opinions, separated from the context, are often misleading, as a perusal of the opinion referred to will show. Judicial opinions, like wills, should be read and construed from their four corners. The decision in the Massachusetts case has no application here except as an authority against the complainants. That decision was based upon the theory that no power of revocation of the license had been reserved. True, the court said that the license was not revocable even though improvidently issued, because "the statutes * * * under the authority of which the board acted and the license was issued contained no provision for its recall when once granted." The privilege had been "unreservedly granted." Not so here. In the instant case the power of revocation or modification was expressly reserved to the board of adjustment. But in the Massachusetts case the court also said:
"The license granted under the police power of the commonwealth, as administered through the agency of the board of health, did not constitute a contract between him and the city, or confer upon him any vested right of property. Neither *Page 177 
did its abrogation, if lawful, deprive him of any immunity or privilege conferred upon him by our constitution;" language peculiarly applicable to the permit here involved.
City of Buffalo v. Chadeayne, supra, stands for a very familiar principle of law. It was decided on the "due process" provision of the constitution, but I have no quarrel with the court's comment on other phases of the case. The decision, had it been rested on other reasoning of the court, would have no application here because the permit there involved had been lawfully issued and its validity was not attacked. The same result would have been reached in this state under MontefioreCemetery Co. v. Newark, supra.
I believe the instant case comes squarely within the decision in Gibbs v. Belleville, supra. It was there held that the matters in issue were still before the board of adjustment and that this court had no authority to act. The matter here is also still before the board of adjustment. True, that board has adopted a resolution directing that the work be discontinued, but that action is not necessarily final and does not necessarily dispose of the appeal. The board's action holds up the work pending change of plans, and if those plans are not changed it is to be presumed that the board will finally dispose of the matter by revoking the permit.
To grant a preliminary injunction in the instant case would not maintain the status quo pending final hearing, which is one of the usual purposes of such writs; but would, in effect, authorize the complainants to proceed with their building operationpendente lite, involving large expenditures, and this under a permit plainly void. To refuse a preliminary injunction would, in effect, maintain the status quo so far as the building operation is concerned and thus accomplish one of the usual purposes of such writs. The order to show cause will therefore be dismissed and a preliminary injunction denied. *Page 178