STATE of Missouri at the relation of GREEN'S BOTTOM SPORTSMEN, INC., a Missouri Corporation, Plaintiff-Appellant,

v.

ST. CHARLES COUNTY BOARD OF ADJUSTMENT, etc., Respondents,

v.

Richard HOLLOWAY et al., Intervenors-Respondents.

No. 37792.

Missouri Court of Appeals, St. Louis District, Division Three.

July 5, 1977.

Melvin D. Benitz, St. Charles, Michael J. Yatkeman, Selner & Hyatt, Clayton, for plaintiff-appellant.

Ronald L. Boggs, Pros. Atty., Bruere & Rollings, Dale L. Rollings, Thomas J. Barklage, St. Charles, for respondents.

WEIER, Judge.

Green's Bottom Sportsmen, Inc., built a gun club facility in an area zoned F–P (Flood Plain District) in St. Charles County after obtaining land use and building permits from the St. Charles Zoning Commissioner. After shooting began in October 1974, nearby homeowners brought an appeal to the St. Charles County Board of Zoning Adjustment requesting revocation of the permits on the basis that a gun club is not a permissible use in the Flood Plain District. The board held a public hearing and revoked the permits. Green's Bottom Sportsmen, Inc., filed a "Petition for Review and Writ of Certiorari" in the St. Charles Circuit Court claiming the board's action was erroneous and illegal. Seventy-three persons owning a total of forty-five separate pieces of property intervened. Their answer asserted the board's decision was proper. They also requested an injunction against the gun club as a nuisance. After trial the court found: (1) that a gun club is not a permissible use in an F–P District, the permits issued to the club were invalid and the board had jurisdiction to deny such use; and (2) that regardless of whether the use was permissible or not in the F–P District, the noise from the shooting constituted an actionable nuisance. The court upheld the actions of the board and enjoined the operation of the gun club. Petitioner Green's Bottom Sportsmen, Inc., appeals. We affirm on the zoning issue and therefore do not discuss the issue of nuisance.

Petitioner contends the board of adjustment lacked jurisdiction to hear the property owners (intervenors) appeal to it because the appeal was filed more than three months after the permits were issued. Section 10 (p. 93) of the St. Charles County

Revised Zoning Order, adopted January 4, 1973, provides in part:

Appeals to the Board may be taken by any owner, lessee or tenant of land, or by a public officer, department, board or bureau affected by any decision of the Zoning Commissioner. Such appeals shall be made within a period of not more than three months, and in the manner provided by the rules of the Board.[1]

Facts pertaining to this issue follow.

Petitioner was chartered as a corporation January 15, 1973. In March 1973 an attorney for the club approached the county planning office to determine under what zoning classification a gun club would be permitted. About the same time residents near the area where the club eventually located heard rumors that a gun club might come into their area. Barbara Jean Thomas, one of the residents, called Leo Ochs, then County Zoning Commissioner, to ask about such a possibility. Mr. Ochs said there couldn't be a gun club in the area unless the land were rezoned. He explained that before any rezoning decision could be made all property owners in the area would be notified by certified mail and be given a chance to appear at a public meeting. Mr. Ochs did not think the gun club would be much of a problem but he said if the homeowners were really concerned they should circulate a petition and present it to the zoning office. In March or April of 1973 a petition was presented to the St. Charles County Planning and Zoning Office stating the signers' objection to the location of a gun club in their area. The planning and zoning staff determined that the petition was not valid as it had not been notarized.

In the Spring of 1974 petitioner purchased a 49.3 acre tract of land on Amrein Road between Green's Bottom Road and the Missouri River near Harvester, Missouri. The land is located in an F–P Flood Plain District. At some point an attorney

for petitioner made an application for rezoning but after talking with Mr. Bratz, then Director or Assistant Director of Planning, and others it was determined that the application for rezoning was not necessary. Petitioner applied for land-use and building permits in April 1974. The application for land use permit indicated the proposed use was a "sportsman club." The application for building permit indicated the building use was to be "club and recreation." The Zoning Commissioner issued permits on April 8, 1974. He determined that the gun club was a permissible use in the F–P District under the Revised Zoning Order, section (e) (p. 19), "Privately operated recreational facility including a lake, swimming pool, tennis court, riding stable or golf course," and subsection (m), "Private clubs" even though gun and skeet clubs and commercial skeet and shooting galleries were not listed under F–P but rather were specifically listed under R–R Recreational Residential District, sections (b) and (c).

Construction of the gun club began in May 1974. Shortly thereafter petitioner put up a "four by four" sign on its property which read "New Home of Greens Bottom Sportsmen, Est. 1973, St. Charles, Mo." By October 1974 construction was nearly complete. Shooting began in the first weeks of that month. The layout of the facility is such that the shot guns shoot in a northeasterly direction, which is somewhat in line with the Oak Forest residential area located on some bluffs approximately eight-tenths of a mile away. The northeasterly direction was chosen because the Winchester Corporation recommended such a layout and because the club members did not want to face into the sun. The club invited the public to shoot at the facility and persons who were not shareholders or members of petitioner were permitted to purchase ammunition and shoot there.

After shooting began the planning office received many complaints from surrounding property owners. On November 26, 1974,

---

1. Virtually the same language appears in § 64.-660 RSMo 1969, dealing with county zoning regulations. Section 89.100 RSMo 1969, concerned with zoning regulations for cities, towns and villages, states that appeals to the board of adjustment "shall be taken within a reasonable time, as provided by the rules of the board."

nearby residents filed an appeal with the board of adjustment requesting the revocation of the land use and building permits which had been issued by the Zoning Commissioner on April 8, 1974. A public hearing was held on December 5, 1974, and the board revoked the permits. In upholding the board's decision the trial court found petitioner operates "both as a private club and as a commercial operation" and that such an operation, whether private or commercial, is not a permitted use within the F–P Flood Plain District. The court concluded that the land use permits issued to appellant were invalid and the St. Charles County Board of Adjustment was within its jurisdiction to revoke the permits and deny such use.

■ Usually an appeal to the board of adjustment must be filed within three months from the date the Zoning Commissioner grants or denies a permit. Thus in *Association for Educational Development v. Hayward*, 533 S.W.2d 579, 582–83[1] (Mo. banc 1976), the court held that the issuance of an occupancy permit by the building commissioner was an appealable "decision or determination" within the meaning of § 89.090 RSMo 1969, and that an appeal to the board of adjustment after the issuance of the permit was not premature. *American Hog Company v. County of Clinton*, 495 S.W.2d 123, 127[8] (Mo.App.1973) determined that the three-month period under § 64.660 RSMo 1969, (in pertinent part identical to § 10 of the St. Charles County Zoning Order, p. 93) began when the county planning commission ruled and advised plaintiff that its hog feeding operation violated the Zoning Order.

■ But here, even though more than three months had elapsed after the Zoning Commissioner had issued a permit for the operation of a "sportsman club," intervenors contend that the permit gave no information to them to cause them to believe shooting was to be conducted on the premises in violation of the regulations concerning the uses of land in an F–P District. They point out that a privately operated recreational facility was a proper purpose but that skeet shooting and shooting galleries could only be operated in an R–R District, and that no notice had been given to them that the latter use was intended. It therefore followed, so they maintain, that the time within which an appeal could be filed did not commence until the actual use became apparent.

■ The evidence discloses that the property owners had no knowledge that permits authorizing appellant to build and operate a gun club on the property in question had been issued until shooting began in October 1974. First, the petition filed by area residents with the planning and zoning office in March or April of 1973 does not show knowledge of any permits because the permits were not issued until a year later. Second, although under § 11(D)(1)(b) and § 11(D)(2)(l) of the St. Charles County Zoning Order the Zoning Commissioner is required to keep his records open to the public, the permit applications filled out by petitioner which merely stated "sportsman club" and "club and recreation," do not contain information that would lead a reasonably intelligent person to believe that shooting would occur on the premises. The records could not be considered constructive notice to the property owners that appellant had been granted permission to build a gun club facility. Third, although construction work on the facility from May 1974 until October 1974 might notify the property owners that some kind of permit had been issued, the property owners would not reasonably believe that a gun club was being built on the premises, particularly in view of the prior assurance from the then County Zoning Commissioner that a gun club could not be built in the area without first rezoning the land which would involve notice to nearby property owners and a public hearing. Further, the sign stating "New Home of Greens Bottom Sportsmen" did not disclose that a gun club facility was being built. Once the shooting began the appeal was filed within two months. Under these circumstances the appeal was timely filed for it is basic to our system of law that due process contemplates notice

and an opportunity to be heard by an appropriate tribunal. Article I, Section 10, Missouri Constitution; *Blydenburg v. David*, 413 S.W.2d 284, 289[5] (Mo. banc 1967). The board of adjustment, therefore, had jurisdiction to revoke the permits and deny appellant use of its property as a gun club.

■ Although not previously ruled on by Missouri decisions, our determination in this matter follows the principle that time to file an appeal commences to run when notice, actual or constructive, is given the party affected by the order to be appealed. In zoning cases other states have determined that in certain situations appeals to the board of adjustment are timely even though filed after the allotted number of days following the Zoning Commissioner's decision. In *Pansa v. Damiano*, 14 N.Y.2d 356, 251 N.Y.S.2d 665, 200 N.E.2d 563 (1964), the Court of Appeals of New York construed an ordinance requiring appeals to the Zoning Board of Appeals "be taken within thirty (30) days of the date of the decision" to mean thirty days from when a person who seeks revocation of a permit has his objections overruled in a decision of which he has notice, rather than thirty days from the date the permit was issued. The court noted that construing the thirty-day period to begin when the building commissioner acts on the permit might be fair and sensible when applied to an applicant denied a permit but such a construction might prevent any appeal at all if it were strictly applied to neighbors objecting to the granting of a permit since the neighbors may not learn of the issuance of the permit for some time. This rule has been followed in more recent New York cases. As stated in *Cave v. Zoning Board of Appeals of Village of Fredonia*, 49 A.D.2d 228, 373 N.Y.S.2d 932, 935[3] (1975), "the commencement of the period runs from the date that grievant becomes chargeable with notice of issuance of the permit complained of, provided there has been no element of undue delay or laches." *See also, Highway Displays, Inc. v. Zoning Board of Appeals of Town of Wappinger*, 32 A.D.2d 668, 300 N.Y.S.2d 605 (1969). Other states have approved a similar rule. *Ostrowsky v. City of Newark*, 102 N.J.Eq. 169, 139 A. 911, 913[7] (1928) (time starts on the date the appealing citizen had notice of the act appealed from); *Hartunian v. Matteson*, 109 R.I. 509, 288 A.2d 485, 490–93 (1972) (preferable to begin time when appellant was chargeable with knowledge of the complained of decision). *See generally*, Anderson, American Law of Zoning, § 16.15, pp. 194–97.

In a slightly different vein *Schneider v. Calabrese*, 5 Pa.Cmwlth. 444, 291 A.2d 326, 331–32[4] (1972) held that even though a homeowner's association did not file an appeal within thirty days of the issuance of a permit or promptly after actually learning of its issuance, their appeal was timely filed "especially because construction had not yet progressed on the appeal date, and because counsel for the Association reasonably relied on the repeated assertions of the Building Inspector" that no valid permit had been issued.

■ Petitioner next contends respondents were barred from appealing to the board by laches. *State ex rel. Burns v. Stanton*, 311 S.W.2d 137 (Mo.App.1958), relied on by petitioner, is distinguishable. In that case adjoining property owners were guilty of laches because some of them had actual knowledge of the decision of the Board of Zoning Adjustment (which body had held a public hearing on the proposed project) long before construction began and others had constructive knowledge of the project more than sixty days before the petition for certiorari was filed. In the case at bar no hearing was held and the property owners had no knowledge that a gun club was coming into their area until after the facility was built and shooting began in October 1974. The facts of this case do not fit into the definition of laches as "neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done" (emphasis added). *Metropolitan St. Louis Sewer District v. Zykan*, 495 S.W.2d 643, 656[18] (Mo.1973), quoting *Lake Development Enterprises*,

*Inc. v. Kojetinsky*, 410 S.W.2d 361, 367–68 (Mo.App.1966).

Petitioner's final contention is that the board of adjustment was estopped from revoking the permits because the revocation constituted an undue hardship on petitioner, because it had the right to rely on the Zoning Commission's interpretation of the Zoning Order and the validity of the permits and because petitioner was lured by the conduct of the Zoning Commission into the investment of time, money and labor in constructing the facility. Petitioner has about $51,000 invested in the property and improvements. Approximately $27,000 of this total represents outstanding obligations on notes issued when the property was purchased. At the board of adjustment hearing Eugene Horstmeier, a shareholder of petitioner, estimated the value of improvements at the facility (which include trap houses, shooting pads, lights and a building) at $15,000. Much of the construction work was done by club members. It is not clear how much money could not be retrieved if the property could not be used as a gun club.

■ The doctrine of estoppel is not generally applicable against a governmental body and if applied, it is done so only in exceptional circumstances and with great caution. *State ex rel. Walmar Investment Co. v. Mueller*, 512 S.W.2d 180, 184[4] (Mo. App.1974). "Further, it is a well established principle in Missouri that a governmental unit is not estopped by illegal or unauthorized acts of its officers . . . it is recognized that a building permit for construction issued but unauthorized under the ordinance is void and a city is not estopped because its employee issued the license or permit." *State ex rel. Walmar Investment Co. v. Mueller, supra* at 184[5].

The permits issued to petitioner were unauthorized and void because a gun club is not a permissible use in an F–P District. Section 5 of the Revised Zoning Order (p. 19) provides: "a building or premises shall be used only for the following purposes . . . ." Neither gun clubs or shooting facilities are listed under the F–P District.

They are listed under the R–R District (Revised Zoning Order, p. 47). The trial court found that petitioner's facility is public rather than private and therefore could not come under Revised Zoning Order, Section 5, F–P District, section (e), "Privately operated recreational facility including a lake, swimming pool, tennis court, riding stable or golf course," or section (m), "Private clubs." The trial court also correctly determined that even if petitioner's facility was private it would not be a permitted use under the F–P District. Petitioner does not contest these findings and conclusions.

■ For its claim of estoppel petitioner relies on *Murrell v. Wolff*, 408 S.W.2d 842 (Mo.1966). In that case a valid permit was issued authorizing the construction of apartment buildings on land zoned commercial and purchased by the developer for $1,500,000. The apartments were part of a large integrated project and the developer had paid a substantial sum to the city to be used for public park purposes when the plats were offered for record. The land was unsuitable for any use other than apartments. The city then passed an ordinance prohibiting apartment buildings in commercial districts. The court denied the city the right to enforce the new ordinance against the developer. It stated at 851[10]: "This is an exceptional case in which honesty and fair dealing require that the doctrine of equitable estoppel be applied, in order to prevent manifest injustice." But the case at bar is not such an exceptional case. The permits issued to petitioner were unauthorized and void. The county did not accept any benefits from petitioner and there is no showing that the land is not suitable for other purposes. The board of adjustment is not estopped from revoking the permits issued by the Zoning Commissioner. Although no dishonesty is involved here, to hold otherwise in a case such as this "would be to put a premium on dishonesty of city officials charged with the duty of issuing such permits and would open the way for connivance and fraud. The will of the official would then be substituted for the mandate or restriction of legislative enactment,

and thus the limitations of zoning acts and ordinances held for naught." *Ostrowsky v. City of Newark*, 102 N.J.Eq. 169, 139 A. 911, 912 (1928).

The judgment of the trial court is affirmed.

KELLY, P. J., and GUNN, J., concur.