

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| DAVID OETTING, | ) | No. ED112717 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 23SL-CC04734 |
| | ) | |
| CITY OF LADUE, ET AL, | ) | Honorable Stanley J. Wallach |
| | ) | |
| Respondents. | ) | Filed: March 11, 2025 |

The City of Ladue's Building Commissioner issued building permits to Y.A. and D.S. ("Property Owners") for residential construction on a lot neighboring David Oetting's home. Almost a year after issuance of the permits, Oetting filed an appeal with Ladue's Zoning Board of Adjustment, seeking revocation of the permits because the lot failed to meet Ladue's frontage requirements. Based on Oetting's significant delay in challenging the permits, the Board dismissed Oetting's appeal as untimely. Oetting argues that he filed his appeal within a reasonable time after confirming the alleged violation, and it was, therefore, timely. Because Oetting failed to file a timely appeal to the Board, the Board's decision is affirmed.

## Background

In January 2022, Property Owners submitted their home building plans to the neighborhood board of trustees as a necessary step before applying for permits from the Board.

Oetting served as one of three trustees at the time. Oetting opposed the building plan, but was outvoted, and the Board approved the building plans for the construction of the residence. Property Owners then applied for building permits from Ladue, which approved and issued the permits in August 2022. Construction began on the property shortly thereafter. In September 2022, Property Owners requested a variance from Ladue to build non-conforming retaining walls. Oetting wrote a letter of opposition to the Board on October 4, 2022.

On June 19, 2023, nearly a year after issuance of the permits, Oetting's attorney wrote a letter to Property Owners describing the potential issues with the development. That letter stated that Property Owner's lot lacked 90 feet of frontage as required by City ordinances. On August 8, 2023, a City Building Official confirmed that the actual frontage was less than 90 feet, measuring only 82.13 feet. On August 28, 2023, Oetting appealed the issuance of the building permits to the Board on the basis that City Ordinance 1175, §§ III.A(3)(b) and V.B(1) required a frontage of ninety feet for buildable lots in residential districts.

The Board held a hearing on October 3, 2023. Relying on its rules and regulations, the Board determined that because Oetting's appeal was submitted after thirty days of the issuance of the permits his appeal was untimely, and it denied his appeal. The Board did not hear any evidence on the merits of the appeal. Oetting petitioned for review in the circuit court, which affirmed the Board's decision. In its order, the circuit court ruled that the thirty-day period began to run when Oetting had notice of permit's issuance. Oetting appeals.

**Standard of Review**

This Court reviews the findings and conclusions of the Board rather than the circuit court's judgment. *Antioch Cmty. Church v. Bd. of Zoning Adjustment of City of Kansas City*, 543 S.W.3d 28, 33 (Mo. banc 2018). Judicial review of an agency decision "shall include the

2

determination whether the [decision is] authorized by law, and in cases in which a hearing is required by law, whether the [decision is] supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, §18. Whether the decision is authorized by law is a legal determination which is reviewed *de novo*. *Antioch*, 543 S.W.3d at 34. Determining whether the decision is supported by competent and substantial evidence "does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal." *Id.* (quoting *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000)). "Rather, 'an appellate court must view the evidence and reasonable inferences therefrom in a light most favorable to the decision.'" *Id.* (quoting *Teffey*, 24 S.W.3d at 684).

**Analysis**

The only issue before this Court is whether the Board erred in finding Oetting's appeal untimely. Pursuant to § 89.100, RSMo 2016, appeals "shall be taken within a reasonable time, as provided by the rules of the board …." Here, the Rules and Regulations of the Board, § 7 state that "… [a]ny such appeal shall be taken within thirty days after the Building Commissioner has … made a final decision, which has been submitted in writing to the applicant." The "time to file an appeal commences to run when notice, actual or constructive, is given the party affected by the order to be appealed." *State ex rel. Green's Bottom Sportsmen, Inc. v. St. Charles Cnty. Bd. of Adjustment,* 553 S.W.2d 721, 725 (Mo. App. 1977). "[T]he commencement of the period runs from the date that grievant becomes chargeable with notice of issuance of the permit complained of, provided there has been no element of undue delay or laches." *Id.* (quoting *Cave v. Zoning Bd. of Appeals of Village of Fredonia*, 49 A.D.2d 228, 373 N.Y.S.2d 932, 935 (1975)). Oetting does not argue that thirty days is unreasonable, as a result, Oetting's appeal needed to be filed

within thirty days of the date that he was chargeable with notice of the permit's issuance. The Board found that he failed to do so.

The record supports the Board's decision. There was substantial evidence that Oetting had notice well in advance of his appeal, including: his opposition to the variance in October 2022 and the fact that construction had been ongoing at the neighboring property since roughly September 2022. At the latest, Oetting had notice that the objectionable permits were issued to the Property Owners on June 19, 2023, when his attorney addressed the Property Owners urging them to "cease further construction pending the resolution of these issues …." *See BT Residential, LLC v. Bd. of Zoning Adjustment of Kansas City, Missouri*, 392 S.W.3d 18, 22 (Mo. App. 2012) (finding that the appellant was aware of the issuance of the permit when its representatives sent an email setting out the reasons it believed the permit was erroneously issued and asking the board to issue a stop-work order and to revoke the permit). Oetting's appeal, filed on August 28, 2023, was, therefore, untimely.

Oetting argues, however, that he cannot be charged with notice until August 8, 2023, when the City Building Official confirmed that the actual frontage was less than ninety feet. In support of this argument, Oetting relies on a misreading of *State ex rel. Green's Bottom Sportsmen, Inc. v. St. Charles Cnty. Bd. of Adjustment*. In *Green's Bottom*, a sportsmen's group sought to build a gun club. It filled out applications for land use and building permits, in which it stated it was building a "sportsman club" that was to be used for "club and recreation." 553 S.W.2d at 723. The Zoning Commissioner determined that the gun club was a permissible use in the area in contravention of the zoning code. *Id.* The permits stated that the building would be operated as a permissible "private club." *Id.* After construction was completed, nearby residents began to hear shooting. The residents filed an appeal with the board of adjustment requesting

4

revocation of the permits. *Id.* at 723-24. Green's Bottom argued that the residents' appeal was untimely because they did not appeal to the board of adjustment within three months from the date the Zoning Commissioner granted the permits pursuant to St. Charles County's Zoning Rules. *Id.* at 722. The board revoked the permits. *Id.* at 724.

On appeal, the evidence showed that the residents had no knowledge that the permits issued authorized a gun club to be built and operated until shooting began. *Id.* at 724. Nothing in the permits gave the homeowners any indication that shooting would occur on the premises. *Id.* Although construction began, the construction itself would not have given the neighbors notice it was a gun club, which remained true even if a particularly concerned neighbor went to view the permits. In other words, the neighbors did not have notice that improper permits were issued until the shooting began. As a result, this Court determined that the neighbors timely appealed. *Id.* at 724.

Oetting misconstrues *Green's Bottom*. *Green's Bottom* did not hold that the time begins to run once the neighbors confirmed that a violation occurred. It held that the time to file an appeal begins to run when a party is chargeable with notice that a permit has issued, and the neighbors in *Green's Bottom* could not have known, even by reviewing the permitting paperwork, that a permit was issued for a gun club until the shooting began. Here, however, the permit was for residential construction on a lot that Oetting believed had insufficient frontage for that purpose. Oetting was well aware of the potential frontage issue and yet failed to promptly appeal.

## Conclusion

The circuit court's judgment affirming the Board's decision is affirmed.

5

_____
John P. Torbitzky, Judge

Robert M. Clayton III, J., and
Michael S. Wright, J., concur.