# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Susquehanna Rheems Holdings, | : | |
| LLC; 155 Broad Street, LLC | : | |
| and Rheems Operator, LLC, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 1394 C.D. 2017 |
| | : | Argued: June 4, 2018 |
| West Donegal Township | : | |
| Zoning Hearing Board | : | |
| | : | |
| Wenger's Feed Mill, Inc. and | : | |
| West Donegal Township | : | |

BEFORE:　　HONORABLE ROBERT SIMPSON, Judge
　　　　　　HONORABLE ELLEN CEISLER, Judge
　　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**　　　　　　**FILED:　JULY 23, 2018**

In this zoning appeal, Susquehanna Rheems Holding, LLC, 155 Broad Street, LLC, and Rheems Operator, LLC (collectively, Objectors) appeal an order of the Court of Common Pleas of Lancaster County[1] (trial court) that affirmed a decision of the West Donegal Township Zoning Hearing Board (ZHB), which denied Objectors' challenge to the substantive validity of an amendment to the Zoning Ordinance of West Donegal Township (zoning ordinance). Objectors assert the West Donegal Township Supervisors' (Supervisors) enactment of Zoning Ordinance No. 211-2015 (zoning amendment) was a violation of substantive due process, and the ZHB erred in upholding the validity of the zoning amendment. Upon review, we affirm.

---

[1] The Honorable James P. Cullen presided.

# I. Background

We summarize the ZHB's findings as follows. Objectors own and operate a long-term nursing care and rehabilitation facility located at 141 Heisey Avenue in West Donegal Township (Township), Lancaster County (nursing home property). The nursing home property is located in the Township's commercial zoning district. Wenger's Feed Mill, Inc. (Wenger's) owns property located on the north side of Harrisburg Avenue in neighboring Mount Joy Township, Lancaster County, where it operates a feed mill (feed mill property). The municipal boundary line between the Township and Mount Joy Township runs along Harrisburg Avenue.

The feed mill property is located in a light industrial zoning district in Mount Joy Township. In addition to the feed mill property, Wenger's owns properties across from the feed mill property on the south side of Harrisburg Avenue in the Township. These properties, which consist of approximately 1.8 acres, are known as 134 through 142 West Harrisburg Avenue. These properties are located to the north of the nursing home property, separated by Libhart Alley, a 16-foot-wide public alley. Reproduced Record (R.R.) at 428a (aerial photograph of the area).

In 2014, Wenger's filed a petition with the Supervisors requesting that the properties it owns on the south side of Harrisburg Avenue be rezoned from commercial to industrial. Wenger's submitted the rezoning petition in order to use these properties for the expansion of its feed mill operation.

Pursuant to the requirements of the Pennsylvania Municipalities Planning Code[2] (MPC), the Township forwarded the rezoning petition to the Lancaster County Planning Commission (LCPC) and the Township Planning Commission for their respective reviews and recommendations. The Township Planning Commission considered the rezoning petition at a public meeting and made a recommendation. Additionally, the LCPC issued a memorandum outlining its review and recommendation regarding the rezoning petition after considering it at a public meeting.

The Supervisors held two public hearings to consider the rezoning petition. After the second hearing, the Supervisors voted to adopt the zoning amendment, which rezoned the properties at 134 through 142 West Harrisburg Avenue from commercial to industrial (rezoned properties).

In August 2015, Wenger's submitted a site plan and a written request for a preliminary opinion to the Township's zoning officer (zoning officer) pursuant to Section 916.2 of the MPC ("Procedure to obtain preliminary opinion").[3] Wenger's proposed use of the rezoned properties includes the construction of three silos for grain storage, a grain receiving building into which trucks would enter to unload, a probe building to test grain, dust collection facilities, office facilities, and parking spaces. The zoning officer issued a preliminary opinion, indicating that: the proposed grain storage facility is permitted by right in the industrial district; the

---

[2] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10101–11202.

[3] Section 916.2 was added by the Act of December 21, 1998, P.L. 1329, 53 P.S. §10916.2.

3

sketch plan Wenger's submitted complied with the design requirements in the industrial district; and the off-street parking requirements were satisfied.

In September 2015, Objectors filed a challenge to the substantive validity of the zoning amendment and appealed the zoning officer's preliminary opinion. A hearing ensued before the ZHB.

As to Objectors' challenge to the zoning amendment, the ZHB made the following findings. The property to the immediate west of the rezoned properties (across Cameron Street), which is identified as the "Agrifrost" property, is located in the Township and is zoned industrial. ZHB Op., 12/2/15, Finding of Fact (F.F.) No. 28. There was no testimony regarding how the Agrifrost property is currently used. To the west of the Agrifrost property is property located in the Township's quarry district. There is an active quarry in that area. The property to the immediate north of the rezoned properties is located in Mount Joy Township and is zoned light industrial. In addition to Wenger's, there is a concrete manufacturing plant, a lumber yard, a school bus terminal, and a mechanical company. The property to the immediate south of the rezoned properties is zoned commercial. This is the location of the nursing home, which houses up to 80 elderly residents at a time. The property to the immediate east of the rezoned properties is zoned commercial, and the commercial district continues for another block to Lime Street. Apparently, these properties consist primarily of single-family dwellings.

The use of the nursing home property for a nursing home is a nonconforming use, which is not permitted by right or special exception in the

4

commercial district in the current or prior zoning ordinances. In 1990 and 1993, the then-owners of the nursing home property sought zoning relief from the ZHB to expand the nonconforming nursing home use in the commercial district.

The rezoned properties and the nursing home property are located in an area that already has significant industrial and commercial development and uses (primarily to the north and west), which currently generate noise, vibration, dust, and traffic typically associated with heavier industrial uses. The rezoned properties are located in an area that has adequate infrastructure to support the uses permitted in the industrial district, including frontage on Harrisburg Avenue and the availability of public utilities. Additionally, there are existing railroad tracks located just north of Harrisburg Avenue, across from the rezoned properties and adjacent to Wenger's existing feed mill operation.

The rezoned properties are located in the Urban Growth Area of the Township's Comprehensive Plan.[4] Urban Growth Areas are a recognized planning method that identify areas in a municipality for development and growth based on existing or proposed infrastructure that will support such growth. Urban Growth Areas also attempt to manage and direct development into these areas in order to protect rural and agricultural areas of a municipality from development. A key element of the Lancaster County Comprehensive Plan is to support the agricultural community and related services.

---

[4] Elizabethtown Borough and Conoy, Mount Joy and West Donegal Townships adopted a "Regional Strategic Plan," which serves as a regional comprehensive plan. http://www.wdtwp.com/site/2102wdtw/Regional_Strategic_Plan.pdf (last visited June 6, 2018). The ZHB referred to this comprehensive plan as the Township's Comprehensive Plan, and we do so here for consistency.

5

Similarly, the Township's Comprehensive Plan identifies as a priority creating and expanding "the allowance of ag-related businesses in appropriate zoning districts." F.F. No. 40. The agricultural community relies on feed mills to buy grain that is grown by farmers and also to provide feed to farmers for their livestock. In order for the agricultural community to survive and flourish, adequate land must be appropriately zoned to allow for associated agricultural support services and industries, including feed mills. Wenger's has been in operation for over 70 years and buys grain from and provides feed to a large number of farmers in the Township and throughout Lancaster County. Wenger's feed mill operation directly supports the agricultural community.

Changing the zoning of the rezoned properties from commercial to industrial to allow Wenger's to expand its existing feed mill operation is consistent with the goals and objectives of the County and Township Comprehensive Plans, both of which contemplate supporting agricultural uses and agricultural-related businesses. The zoning amendment is also consistent with the Township and County Comprehensive Plans as it relates to the location of future development in the Township.

The zoning ordinance requires that industrial uses satisfy the "Industrial Performance Standards Procedures" set forth in Section 240-107, which contains a comprehensive set of performance standards regulating, among other things, noise, vibration, dust, smoke, odor, toxic matter, fire hazards, heat and radiation generated by industrial uses. Section 240-107(B)(1) of the zoning ordinance sets forth the legislative intent for these performance standards, stating: "The [Supervisors]

6

[desire] to provide standards for the operation of industrial uses within the Township in order to protect the health, safety and welfare of Township residents, workers at such establishments, and visitors to the Township." F.F. No. 48. This Section requires that all applications for industrial uses be accompanied by a certification from a registered professional engineer in Pennsylvania that the proposed use can satisfy the performance standards. Section 240-107(E) of the zoning ordinance. Any industrial use proposed for and operated on the rezoned properties will have to satisfy the industrial performance standards procedures set forth in Section 240-107 of the zoning ordinance.

Objectors presented the testimony of expert witness, W. Jeffery Nagorny, P.E. (Objectors' Expert). Objectors' Expert opined that the zoning amendment would have adverse health effects on the residents of the nursing home property; however, he acknowledged that his analysis did not consider the zoning ordinance's industrial performance standards. As a result, the ZHB did not find Objectors' Expert's testimony credible or probative.

In November 2014, the Township Planning Commission held a public meeting at which it reviewed the rezoning petition and considered comments from Objectors and Wenger's representatives. Thereafter, the Township Planning Commission voted to recommend adoption of the rezoning petition. Also in November 2014, the LCPC evaluated the rezoning petition and noted, among other things, that the property to the immediate west of the rezoned properties is already zoned industrial; as a result, the proposed rezoning would be a "natural extension of that zoning district" and "would be in keeping with the industrial uses to the north

7

and west." F.F. No. 54. LCPC also noted that the proposed rezoning was consistent with both the County and Township Comprehensive Plans.

Objectors had several opportunities to present their views and opinions regarding the rezoning petition at numerous public meetings, including a public meeting before the Township Planning Commission and two public hearings before the Supervisors.

As to Objectors' appeal of the zoning officer's preliminary opinion, the ZHB found that the proposed use of the rezoned properties as described in Wenger's request for a preliminary opinion, *i.e.*, a grain storage facility and related uses and structures, was permitted by right in the industrial zoning district. Section 240.69(F) of the zoning ordinance. The sketch plan presented to the zoning officer shows Wenger's proposed development for the rezoned properties meets the area and bulk requirements for the industrial district for the limited purposes of Section 916.2 of the MPC.

Based on these findings, the ZHB made the following conclusions of law. Section 909.1(b)(5) of the MPC[5] vests exclusive jurisdiction in the governing body for "[a]ll petitions for amendments to land use ordinances, pursuant to the procedures set forth in section 609." This Section further states: "Any action on such petitions shall be deemed legislative acts …." Id. (emphasis added).

---

[5] 53 P.S. §10909.1(b)(5). This Section was added by the Act of December 21, 1988, P.L. 1329.

Pennsylvania courts consistently hold that the consideration and adoption of a zoning amendment is a purely legislative act within the complete discretion of the local governing body that is not subject to direct judicial review. E. Lampeter Twp. v. Cty. of Lancaster, 744 A.2d 359 (Pa. Cmwlth. 2000); Ass'n of Concerned Citizens of Butler Valley v. Butler Twp. Bd. of Supervisors, 580 A.2d 470 (Pa. Cmwlth. 1990); Bd. of Comm'rs of McCandless Twp. v. Beho Dev. Co., 332 A.2d 848 (Pa. Cmwlth. 1975). Further, Section 601 of the MPC assigns responsibility for enacting or refusing to enact zoning ordinances to the local legislative body, stating, "the governing body of each municipality, in accordance with the conditions and procedures set forth in this act, may enact, amend and repeal zoning ordinances to implement comprehensive plans and to accomplish any of the purposes of this act." 53 P.S. §10601 (emphasis added).

Here, the ZHB determined, the Supervisors duly adopted the zoning amendment pursuant to the procedures outlined in the MPC. The Supervisors' actions in adopting the zoning amendment constituted a legislative act that was solely within their discretion as the Township's elected officials.

In addition, "[a] zoning ordinance is presumed to be valid. Therefore, one challenging the zoning ordinance has the heavy burden of establishing its invalidity. Where the validity of the zoning ordinance is debatable, the legislative judgment of the governing body must control." Woll v. Monaghan Twp., 948 A.2d 933, 938 (Pa. Cmwlth. 2008). "In Pennsylvania, the constitutionality of a zoning ordinance is reviewed under a substantive due process analysis." Plaxton v. Lycoming Cty. Zoning Hearing Bd., 986 A.2d 199, 204 (Pa. Cmwlth. 2009). "Under such analysis, the party challenging the validity of provisions of the zoning

ordinance must establish that they are arbitrary and unreasonable and have no substantial relationship to promoting the public health, safety, and welfare." Id.

Further, "the exercise of judgment in regard to zoning regulations will not be interfered with except where there is obviously no relation to health, safety, morals or general welfare." Ethan-Michael, Inc. v. Bd. of Supervisors of Union Twp., 918 A.2d 203, 210 (Pa. Cmwlth. 2007). "The fact that [landowners] do not agree with the public safety analysis of their elected officials who enacted the [o]rdinances does not mean that the [o]rdinances are irrational." Johnston v. Twp. of Plumcreek, 859 A.2d 7, 14 (Pa. Cmwlth. 2004). Thus, even if it is determined that "the supervisors might have made a better choice … the choice was theirs to make and the remedy for any such error is not with the courts, but rather the ballot box." Sharp v. Zoning Hearing Bd. of Twp. of Radnor, 628 A.2d 1223, 1229 n.3 (Pa. Cmwlth. 1993) (citation omitted).

Spot zoning is the unreasonable or arbitrary classification of a small parcel of land, dissected or set apart from surrounding properties, with no reasonable basis for the differential zoning. Penn Street, L.P. v. E. Lampeter Twp. Zoning. Hearing Bd., 84 A.3d 1114 (Pa. Cmwlth. 2014). "The most determinative factor in an analysis of a spot zoning question is whether the parcel in question is being treated unjustifiably different from similar surrounding land, thus creating an 'island' having no relevant differences from its neighbors." Id. at 1121 (citation omitted).

In addition, the fact that a landowner requests a zoning amendment is not relevant to the validity of the zoning amendment. Likewise, the underlying

10

motives of a supervisor in adopting a zoning amendment are not relevant. Takacs v. Indian Lake Borough Zoning Hearing Bd., 11 A.3d 587 (Pa. Cmwlth. 2010). Rather, a zoning amendment must stand or fall on its own terms. Id.

Here, the ZHB determined, changing the zoning classification of the rezoned properties from commercial to industrial represented an extension of the existing industrial zoning to the west and north of the rezoned properties. Further, changing the zoning classification of the rezoned properties from commercial to industrial did not result in these parcels being treated "unjustifiably different from surrounding land." ZHB Op., Concl. of Law No. 17. Rather, Exhibit T-2 shows existing, extensive industrial and commercial development surrounding the rezoned properties. Additionally, because all industrial uses on the rezoned properties will have to meet stringent performance standards before any use is approved, the ZHB determined that the health, safety, and welfare of the community will be adequately safeguarded. The ZHB stated that the extension of the existing industrial district into an area that has existing industrial uses, as well as the infrastructure to support such uses, represents a rational basis for adoption of the zoning amendment. The ZHB determined Objectors failed to carry their heavy burden of establishing the zoning amendment was irrational or arbitrary.

As to Objectors' appeal of the zoning officer's preliminary opinion, the ZHB explained, Section 916.2 of the MPC states (with emphasis added):

> In order not to unreasonably delay the time when a landowner may secure assurance that the ordinance or map under which he proposed to build is free from challenge, and recognizing that the procedure for preliminary approval of his development may be too cumbersome or

11

may be unavailable, the landowner may advance the date from which time for any challenge to the ordinance or map will run under section 914.1[6] by the following procedure:

> (1) The landowner may submit plans and other materials describing his proposed use or development to the zoning officer for a preliminary opinion as to their compliance with the applicable ordinances and maps. <u>Such plans and other materials shall not be required to meet the standards prescribed for preliminary, tentative or final approval or for the issuance of a building permit so long as they provide reasonable notice of the proposed use or development and a sufficient basis for a preliminary opinion as to its compliance</u>.

> (2) If the zoning officer's preliminary opinion is that the use or development complies with the ordinance or map, notice thereof shall be published once each week for two successive weeks in a newspaper of general circulation in the municipality. Such notice shall include a general description of the proposed use or development and its location, by some readily identifiable directive, and the place and times where the plans and other materials may be examined by the public. The favorable preliminary approval under section 914.1 and the time therein specified for commencing a proceeding with the board shall run from the time when the second notice thereof has been published.

Thus, the ZHB stated, the purpose of a preliminary opinion is to advance the date from which a challenge to the underlying ordinance or map will run; it is not to approve a proposed use or site configuration.

Here, the ZHB explained, the zoning officer properly issued a preliminary opinion that the proposed use of the rezoned properties as depicted in

---

[6] Section 914.1 was added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10914.1.

Wenger's sketch plan complied with the zoning ordinance and map for the sole purpose of advancing the date on which a challenge to the ordinance or map would run. The ZHB concluded Section 916.2 of the MPC is a procedural mechanism available to landowners to guard against future challenges to the validity of a zoning ordinance or map, but it is not a binding, substantive determination regarding the interpretation and application of zoning ordinance provisions to a proposed use. Thus, the ZHB determined, the zoning officer's preliminary opinion here forced Objectors to file their validity challenge to the zoning amendment so the challenge could be adjudicated and resolved before Wenger's proceeded to develop the rezoned properties.

The ZHB affirmed the zoning officer's preliminary opinion as a correct decision for the sole purpose of advancing the date from which a challenge to the zoning ordinance could run. The ZHB did not find it necessary, and, therefore, did not render a conclusion of law that the sketch plan as presented met all of the zoning ordinance's technical requirements. Instead, such a determination would be made, if appropriate, when a specific application for development was presented.

The ZHB also provided the following analysis. It is a fundamental principle that a municipality's elected officials have authority and discretion to determine which laws and ordinances to adopt. This is a legislative act within the Supervisors' sole province. As long as there is a rational basis for adopting the zoning amendment and there was a fair and open process for public participation, courts uphold such enactments, notwithstanding good faith disagreements over the propriety of the decision.

Here, the ZHB explained, this process worked exactly as it was intended to work. Wenger's submitted its rezoning petition and made its case as to why the Supervisors should adopt it. Objectors vigorously opposed the petition. The Supervisors received input from the County and Township Planning Commissions, both of which reviewed the zoning amendment carefully and provided input and recommendations. The Supervisors held two public hearings at which both Wenger's and Objectors had the opportunity to make their respective cases. The ZHB stated Objectors had every right to advocate and attempt to persuade the Supervisors not to adopt the rezoning petition, and they should be commended for making their case with passion and commitment. Ultimately, however, the Supervisors decided to adopt the zoning amendment. The ZHB explained that decision was within the Supervisors' discretion, even if Objectors disagreed with the basis for that decision.

Thereafter, Wenger's requested that the zoning officer issue a preliminary opinion in order to advance any challenge to the validity of the zoning amendment. The ZHB stated the zoning officer properly issued his preliminary opinion, thereby compelling Objectors to lodge their validity challenge. While the ZHB recognized Objectors' concerns, it stated that the Supervisors properly considered those concerns during the enactment process. Regardless of whether the ZHB agreed or disagreed with the Supervisors' decision, the ZHB stated, the

14

evidence clearly established there was a rational basis and legitimate planning reason for adopting the zoning amendment; therefore, the zoning amendment was valid.[7]

For these reasons, the ZHB denied Objectors' challenge to the validity of the zoning amendment and their appeal of the zoning officer's preliminary opinion. Objectors appealed to the trial court.

Without taking additional evidence,[8] the trial court issued a thorough opinion in which it affirmed the ZHB's decision. Objectors now appeal to this Court.

## II. Issues

On appeal,[9] Objectors raise two issues. First, they argue the Supervisors' enactment of the zoning amendment was a violation of substantive due process. Additionally, Objectors contend the ZHB's decision to uphold the validity of the zoning amendment was an abuse of discretion or an error of law.

## III. Discussion
## A. Spot Zoning
## 1. Contentions

Objectors begin by asserting that, in a substantive validity challenge to a zoning ordinance, the ordinance will be struck if the challenger can show it is unreasonable, arbitrary, or not substantially related to the police power interest it

---

[7] The ZHB also rejected Objectors' suggestion that a "taking" occurred as a result of the Supervisors' adoption of the zoning amendment. Objectors do not raise this issue on appeal.

[8] Before the trial court, Objectors filed a motion to present additional evidence, which the trial court denied. Objectors do not challenge the trial court's denial of their motion to present additional evidence before this Court.

[9] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. Penn Street, L.P. v. E. Lampeter Twp. Zoning Hearing Bd., 84 A.3d 1114 (Pa. Cmwlth. 2014).

15

purports to serve. Penn Street. They argue Pennsylvania law is clear that a municipal legislative body that creates special zoning rules for small, isolated parcels is guilty of spot zoning. Courts define spot zoning as the singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment. Sharp. There is no precise formula for determining whether a classification of property constitutes spot zoning; rather, cases are decided on their specific facts, guided by case law. Id.

Objectors contend the size of the property, topography, location and characteristics of the land are among the factors to be considered in ascertaining whether an ordinance constitutes spot zoning. Knight v. Lynn Twp. Zoning Hearing Bd., 568 A.2d 1372 (Pa. Cmwlth. 1990). They maintain that the most important factor is whether the rezoned land is treated unjustifiably different from similar surrounding land, thereby creating an "island" having no relevant differences from its neighboring property. Schubach v. Zoning Bd. of Adjustment (Phila.), 270 A.2d 397, 399 (Pa. 1970).

Objectors argue that in Schneider v. Calabrese, 291 A.2d 326 (Pa. Cmwlth. 1972), this Court stated that spot zoning is an attempt to wrench a single small lot from its environment and give it a new rating that disturbs the tenor of the neighborhood. The general rule is that if a change in zoning is reasonable, is in accordance with the comprehensive plan, and can be justified as contributing to the public health, safety, and welfare, it will not be held invalid as spot zoning. Objectors assert this Court ultimately held that an amendment that rezoned a 12,800-

16

square-foot lot in a low density residential zone to permit construction of a small apartment building was invalid spot zoning.

Objectors further contend that in Schubach v. Zoning Board of Adjustment (Philadelphia), the Supreme Court invalidated an amendment to a zoning ordinance that created a two-acre commercial zone surrounded by residential zoning. The Court was not persuaded by the fact that a large commercial zone was located a few hundred feet away, stating:

> Appellees also place substantial emphasis upon the fact that there is a very large commercially-zoned area within a few hundred feet to the north of the premises in question. It is argued that this per se indicates that the area is not truly residential in nature and, therefore, that the [lot at issue] should also be commercially zoned. We are not persuaded by such an argument since it would mean that every borderline area in the city could be subjected to such down zoning. The extension of this reasoning could lead to one tract after another falling into the C-2 classification: since A is C-2, then B should be C-2; since B is C-2, then C should be C-2; since C, then D; and so on, ad infinitum.

Id. at 400.

Similarly, Objectors argue, in In re Appeal from Fayette County Ordinance No. 83-2 (Oravets Appeal), 509 A.2d 1342 (Pa. Cmwlth. 1986), the owner of a six-acre lot in a residential district applied for and obtained a rezoning of his property to industrial use. The area directly across a state highway from the applicant's property was also zoned industrial. This Court invalidated as spot zoning the reclassification of the applicant's property from residential to industrial, specifically noting that the fact that the land directly across the street was zoned

17

industrial was not a relevant consideration for treating the applicant's property any different than the surrounding property. As the Court stated:

> The fact that property on the other side of Route 119 is zoned other than R-2 is of no consequence here because '[t]he line of demarcation must be fixed somewhere.' DiSanto v. Zoning Bd. of Adjustment, [189 A.2d 135, 137 (Pa. 1963)]. Simply because a piece of property borders property zoned industrial does not mean it automatically can be rezoned industrial. Schubach [v. Zoning Board of Adjustment (Phila.)].

Id. at 1346.

Here, Objectors maintain, the area the Township rezoned for industrial use (comprised only of the rezoned properties) is no different in any relevant aspect than any of the surrounding properties. As depicted in the Township Zoning Map, Objectors argue, Wenger's 1.79-acre tract is now an industrial zone surrounded on two sides by a larger commercial zone. This commercial zone includes not only Objectors' nursing home, which houses 80 residents, but also many single-family dwellings. F.F. No. 32. Objectors assert that, the fact that the area to the west of the rezoned properties across Cameron Street is zoned industrial is not a legitimate reason for the rezoning as such an argument would mean that every borderline area in the Township could be subjected to down zoning. Schubach v. Zoning Bd. of Adjustment (Phila.).

Further, Objectors argue, the rezoning disturbs the tenor of the neighborhood. To that end, they assert the neighborhood at issue is comprised primarily of a nursing home as well as multiple single-family dwellings. R.R. at

18

428a; F.F. No. 32. Although the neighborhood is zoned commercial, Objectors contend, the tenor of the neighborhood is residential. They maintain it is hard to imagine how placing an industrial zone within this neighborhood, and within 60 feet of the nursing home's 80 residents, would not adversely alter the tenor of the neighborhood. Schneider.

In sum, Objectors argue the Township impermissibly singled out one tract for different treatment from that accorded to similar surrounding land indistinguishable in character, for the economic benefit of the lot owner and to the detriment of the residents of the nursing home and the surrounding homes. Objectors contend this type of legislative act is strictly prohibited. Sharp.

**2. Analysis**

Initially, we note, this Court may not substitute its interpretation of the evidence for that of the ZHB. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005). It is the function of the ZHB to weigh the evidence before it. Id. The ZHB is the sole judge of the credibility of witnesses and the weight afforded their testimony. Id. Assuming the record contains substantial evidence, we are bound by the ZHB's findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence. Id. Further, the ZHB is free to reject even uncontradicted testimony it finds lacking in credibility, including the testimony of an expert witness. Id.

Spot zoning is the "unreasonable or arbitrary classification of a small parcel of land, dissected or set apart from surrounding properties, with no reasonable

basis for the differential zoning." Penn Street, 84 A.3d at 1121 (quoting Atherton Dev. Co. v Twp. of Ferguson, 29 A.3d 1197, 1204 (Pa. Cmwlth. 2011); BPG Real Estate Investors-Straw Party II, L.P. v. Bd. of Supervisors of Newtown Twp., 990 A.2d 140, 150 (Pa. Cmwlth. 2010); Christman v. Zoning Hearing Bd. of Twp. of Windsor, 854 A.2d 629, 634-35 (Pa. Cmwlth. 2004)). "When faced with a spot zoning challenge, a reviewing court must presume the zoning ordinance is valid and constitutional; the burden of proving otherwise is on the challenging party, who must show that the provisions are arbitrary and unreasonable, and have no relation to the public health, safety, morals, and general welfare." Id. (quoting Atherton, 29 A.3d at 1204; Christman, 854 A.2d at 635).

Further, in Schneider, this Court explained:

The general rule is that if a change of zone is reasonable and is in accordance with the comprehensive plan of the zoning ordinance and can be justified as contributing to the public health, safety and general welfare, it will not be held invalid as 'spot zoning,' even though the reclassification affects only a single piece of property or may incidentally discriminate in favor of the owner thereof.

Id. at 332 (citations omitted).

"Spot zoning must be clearly established; if the validity of the rezoning ordinance is debatable, it must be permitted to stand." Penn Street, 84 A.3d at 1121. The most determinative factor in an analysis of a spot zoning question is whether the parcel at issue is being treated unjustifiably different from similar surrounding land, thus creating an "island" having no relevant differences from its neighbors. Id.

20

"There is no precise formula for determining whether a classification of property constitutes spot zoning and cases should be decided on the facts guided by case law." Id. (quoting Sharp, 628 A.2d at 1228).

Here, in rejecting Objectors' spot zoning claim, the ZHB made the following relevant determinations (with emphasis added):

> 27. The [ZHB] took administrative notice of the [Township's] municipal ordinances (including the [zoning ordinance]) and the Regional Strategic Plan for Elizabethtown Borough, Conoy Township, Mount Joy Township and [the] Township.
>
> 28. The property to the immediate west of the [r]ezoned [p]roperties (across Cameron Street), which is identified as the 'Agrifrost' property, is located within [the] Township and is zoned [i]ndustrial. Ex. T-2; Ex. T-13. There was no testimony as to how the Agrifrost property is currently being used.
>
> 29. To the west of the Agrifrost property is property located within the Township's [q]uarry district. There is an active quarry in this area. Ex. T-2.
>
> 30. The property to the immediate north of the [r]ezoned [p]roperties (across Harrisburg Avenue) is located within Mount Joy Township and is zoned [l]ight [i]ndustrial. Ex. T-2. In addition to Wenger's Feed Mill, there is a concrete manufacturing plant (R.E. Pierson Delaware Valley Concrete), a lumber yard (Carter Lumber), a school bus terminal (Durham School Service) and a mechanical company (Bass Mechanical). Ex. T-2.
>
> 31. The property to the immediate south of the [r]ezoned [p]roperties (across Libhart Alley) is zoned [c]ommercial. This is the location of the [n]ursing [h]ome [p]roperty, which houses up to [80] elderly residents at a time. The

21

[c]ommercial district also includes properties on the south side of Heisey Avenue. Ex. T-2

32. The property to the immediate east of the [r]ezoned [p]roperties is zoned [c]ommercial, which district continues for another block to Lime Street. It appears from Exhibit T-2 that these properties consist primarily of single-family residential dwellings.

33. The use of the [n]ursing [h]ome [p]roperty for a nursing home is a non-conforming use as that use is not permitted by right or special exception within the [c]ommercial district in the current or prior [z]oning [o]rdinances.

34. In 1990 and 1993, the then owners of the [n]ursing [h]ome [p]roperty sought zoning relief from the [ZHB] to expand the non-conforming nursing home use in the [c]ommercial district.

35. The [r]ezoned [p]roperties and the [n]ursing [h]ome [p]roperty are located in an area that already has significant industrial and commercial development and uses (primarily to the north and west), which presently generate[] noise, vibration, dust and traffic typically associated with heavier industrial uses.

36. The [r]ezoned [p]roperties are located in an area that has adequate infrastructure to support the uses permitted in the [i]ndustrial district, including fronting on Harrisburg Avenue and having public utilities available. In addition, there are existing railroad tracts [sic] just north of Harrisburg Avenue, across from the [r]ezoned [p]roperties and adjacent to Wenger's existing operation. Ex. T-2.

37. The [r]ezoned [p]roperties are located within the Urban Growth Area of the Township's Comprehensive Plan.

38. Urban Growth Areas are a recognized planning method that identifies areas within a municipality for development and growth based on existing or proposed infrastructure that will support such growth. Urban

22

Growth Areas also attempt to manage and direct development into these areas in order to protect rural and agricultural areas of a municipality from development.

39. A key element of the Lancaster County Comprehensive Plan is to support the agricultural community and related services. Ex. T-16.

40. The Township Comprehensive Plan likewise identifies as a priority creating and expanding 'the allowance of ag-related businesses in appropriate zoning districts.' Township Comprehensive Plan at p. 105[;] [http://www.wdtwp.com/site/2102wdtw/Regional_Strategic_Plan.pdf (last visited June 6, 2018)].

41. The agricultural community relies upon feed mills to buy grain grown by farmers and also to provide feed to farmers for their livestock.

42. In order for the agricultural community to survive and flourish, adequate land must be appropriately zoned to allow for associated agricultural support services and industries, including feed mills.

43. Wenger's has been in operation for over 70 years and buys grain from and provides feed to a large number of farmers in the Township and throughout Lancaster County.

44. Wenger's operation directly supports the agricultural community.

45. Changing the zoning on the [r]ezoned [p]roperties from [c]ommercial to [i]ndustrial to allow Wenger's to expand its feed mill operation is consistent with the goals and objectives of the County's and Township's Comprehensive Plans, both of which call for supporting agricultural uses and agricultural related businesses.

46. The [z]oning [a]mendment also is consistent with the Township and County Comprehensive Plans as it relates to the location of future development within the Township.

47. The [z]oning [o]rdinance requires that industrial uses meet 'Industrial Performance Standards Procedures' found at [S]ection 240-107, which sets forth a comprehensive set of performance standards regulating, *inter alia*, noise, vibration, dust, smoke, odor, toxic matter, fire hazards, heat and radiation generated by industrial uses.

48. Section 240-107[(B)(1)] sets forth the legislative intent for these performance standards, stating: 'The [Supervisors] desire[] to provide standards for the operation of industrial uses within the Township in order to protect the health, safety and welfare of Township residents, workers at such establishments, and visitors to the Township.'

49. This [S]ection also requires that all applications for industrial uses be 'accompanied by a certification from a registered professional engineer in the Commonwealth of Pennsylvania that the proposed use can meet the performance standards of the appropriate district.' § 240-107 (E).

50. Any industrial use proposed for and operated on the [r]ezoned [p]roperties will have to satisfy the Industrial Performance Standards set forth in [S]ection 240-107.

51. While [Objectors' Expert] testified that in his opinion the [z]oning [a]mendment would have adverse health [effects] on the residents of the [n]ursing [h]ome, he acknowledged that he failed to consider in his analysis the Industrial Performance Standards Procedures of the [z]oning [o]rdinance.

52. Accordingly, the [ZHB] does not find [Objectors' Expert's] testimony to be credible or probative.

53. On November 13, 2014, the Township Planning Commission held a public meeting at which time it reviewed the [rezoning] [p]etition and also considered comments from the [n]ursing [h]ome and from Wenger's. Thereafter, the [Township] Planning Commission voted to

24

recommend adoption of the [rezoning] [p]etition to the Supervisors.

54. On November 25, 2014, the LCPC evaluated the [r]ezoning [p]etition and noted, *inter alia*, that the property to the immediate [w]est of the [r]ezoned [p]roperties already is zoned [i]ndustrial and, therefore, the proposed rezoning would be a 'natural extension of that zoning district' and 'would be in keeping with the industrial uses to the north and west.' LCPC also noted that the proposed rezoning was consistent with both the Lancaster County Comprehensive Plan and the [Township] Comprehensive Plan. Ex. T-6.

55. [Objectors] had numerous opportunities to present their views and opinions regarding the [r]ezoning [p]etition at numerous public meetings, including a public meeting before the Township's Planning Commission and two public hearings before the Supervisors.

* * * *

16. In the instant case, rezoning the [r]ezoned [p]roperties from [c]ommercial to [i]ndustrial represented an extension of the existing [i]ndustrial zoning that exists to the west and north of the [r]ezoned [p]roperties.

17. Rezoning the [r]ezoned [p]roperties from [c]ommercial to [i]ndustrial did not result in these parcels being treated 'unjustifiably different from surrounding land.' Rather, Ex. T-2 shows existing extensive industrial and commercial development surrounding the [r]ezoned [p]roperties.

18. Because all industrial uses on the [r]ezoned [p]roperties will have to meet stringent performance standards before any use is approved, the [ZHB] finds that the health, safety and welfare of the community will be adequately safeguarded.

19. The extension of the existing [i]ndustrial district in an area that has existing industrial uses, as well as the

25

> infrastructure to support such uses, represents a rational
> basis for adopting the [z]oning [a]mendment.

F.F. Nos. 27-55; Concls. of Law Nos. 16-19. Upon review, we discern no error in the ZHB's rejection of Objectors' spot zoning claim.

Specifically, Objectors, who bore the burden of proof here, Penn Street, did not prove that the rezoned properties were being treated unjustifiably different from similar surrounding land, thus creating an "island" having no relevant differences from their neighbors. Further, our review of the record reveals that, although the properties located immediately to the south (the nursing home property, located across Libhart Alley) and the east of the rezoned properties are zoned commercial, the properties located immediately to the north (across West Harrisburg Avenue in neighboring Mount Joy Township) and west are zoned light industrial and industrial, respectively. Original Record (O.R.), Item #9, Exs. T-2, T-12, T-13. Additionally, our review of the record confirms the ZHB's determinations that there is extensive commercial *and* industrial development surrounding the rezoned properties. O.R., Item #9, Ex. T-2.

Moreover, as is evident from the above-quoted ZHB determinations, the fact-finder reasonably explained why the rezoned properties are not being treated unjustifiably different from similar surrounding land. To that end, the fact-finder's supported determinations reveal that rezoning the rezoned properties from commercial to industrial represents an extension of the existing industrial zoning to the west and north of the rezoned properties. Concl. of Law No. 16; O.R., Item #9, Exs. T-2, T-12, T-13. And, the rezoned properties are situated in an Urban Growth Area of the Township's Comprehensive Plan, an area with adequate infrastructure

26

to support the uses permitted in the industrial district, including its frontage on Harrisburg Avenue. F.F. No. 36. Thus, as the fact-finder reasonably concluded, the extension of the existing industrial district in an area that has existing industrial uses, as well as the infrastructure to support such uses, represents a rational basis for the adoption of the zoning amendment. Concl. of Law. No. 19.

In addition, as we explained in Atherton and Penn Street, where "an honest difference of opinion" exists as to how a property should be zoned, and "sound policy" could support a decision that a property was appropriately zoned for either of two competing zoning classifications, we cannot disturb a local governing body's legislative decision. Penn Street, 84 A.3d at 1126 (quoting Atherton, 29 A.3d at 1207). Thus, "[i]t is well established that, if the validity of the legislation is fairly debatable, the legislative judgment must be allowed to control." Id. These principles apply with equal force here.

Further, the requested rezoning received support from both the Township and County Planning Commissions. More particularly, after a public meeting, the Township Planning Commission voted to recommend adoption of the rezoning to the Supervisors. F.F. No. 53; O.R., Item #9, Ex. T-7. Additionally, the LCPC reviewed the rezoning request, and it indicated that the property to the immediate west of the rezoned properties was already zoned industrial; therefore, the proposed rezoning appeared to be a "natural extension of that zoning district" and "would be in keeping with the industrial uses to the north and west." F.F. No. 54; O.R., Item #9, Ex. T-6. LCPC also noted that the County Comprehensive Plan indicated that the rezoned properties were located within the Elizabethtown Urban

Growth Area, and that the Regional Strategic Plan of Elizabethtown Borough and Conoy, Mount Joy and West Donegal Townships encourages development of commercial and industrial sites in designated growth areas. O.R., Item #9, Ex. T-6.

Finally, as the trial court cogently explained (with emphasis added):

[Objectors] maintain that, being bound on two sides by property zoned commercial, the rezoning of Wenger's tracts creates an industrial island of the type disfavored in case law. Further, the mere fact that [the rezoned properties] border property zoned industrial does not mean [they] can be automatically rezoned industrial. [See Schubach v. Zoning Bd. of Adjustment (Phila.); Oravets Appeal].

In Schubach [v. Zoning Board of Adjustment (Philadelphia)], the Supreme Court reversed a decision allowing a lot in a residentially zoned area to be rezoned commercial in order to permit construction of a nursing home. In that case, there was a large commercially zoned area several hundred feet to the north but all properties contiguous to the subject premises were zoned residential. The subject premises did not differ from its neighbors in location or topography. The record also established that there was no reason the nursing home could not be built in a properly zoned area and, while there was evidence that such facilities were generally needed in the city, there was no evidence that it would fulfill any particular need of this particular community. [Schubach [v. Zoning Bd. of Adjustment (Phila.)], 270 A.2d at 400]. The Supreme Court found that the requested rezoning constituted a 'classic instance of spot zoning,' [id. at 399], having 'created an island of commercial zoning in the midst of a residential area,' [id. at 400]. Absent evidence of necessity or relevant differentiating facts that distinguished the subject premises from its neighbors, the rezoning was illegal. The Supreme Court also found unpersuasive the argument that rezoning should be allowed because nearby property was zoned commercial,

28

noting that, by such reasoning, every borderline area of the city could be subject to rezoning. [Id. at 400].

In [Oravets] Appeal, the Commonwealth Court reversed a decision allowing property to be rezoned from residential to heavy industrial where the rezoned property was surrounded by residential uses even though there were non-conforming, non-residential uses, including an equipment repair business on an adjacent property, and there was an industrial zone on the opposite side of Route 119. The Commonwealth Court determined that the non-conforming uses should not be considered and that it was irrelevant that property on the opposite side of Route 119 was already zoned industrial. [Id. at 1346]. The Commonwealth Court further determined that there was no justification for treating the rezoned parcel differently from surrounding parcels since the comprehensive development plan, referenced in the zoning ordinance, identified the rezoned property as best suited to residential development and promotion of orderly community development required zoning authorities be able 'to put a piece of property to the use which is most beneficial to the comprehensive plan.' Id. (quoting Schubach v. Silver, [336 A.2d 328, 338 (Pa. 1975)]).

Based on the record and the applicable law, the Court finds [Objectors'] arguments on this point unpersuasive. [Objectors] have failed to meet their heavy burden of establishing that the zoning [amendment] constitutes impermissible spot zoning. Unlike the subject properties in both Schubach [v. Zoning Board of Adjustment (Philadelphia)] and [Oravets] Appeal, the property sought to be rezoned here is not surrounded by residential uses. As the ZHB determined, the land immediately to the west of the rezoned parcel is already zoned industrial and the area around [Objectors'] nursing home and the rezoned parcel already has significant industrial and commercial development along with the

29

attendant consequences of such development. [F.F. Nos. 28, 35]. …[10]

[Objectors'] assertion that the zoning of property to the north and west of the rezoned parcel is irrelevant is unconvincing. In both Schubach [v. Zoning Board of Adjustment (Philadelphia)] and [Oravets] Appeal, the differently zoned districts were not immediately adjacent to the property to be rezoned and the record in each case was silent as to the effect that those differently zoned districts had on the area surrounding the property sought to be rezoned. In the present case … the ZHB explicitly found that the area around [the rezoned properties] and [Objectors'] nursing home experienced the 'noise, vibration, dust and traffic typically associated with heavier industrial uses.' [F.F. No. 35]. That Wenger's property to the north across West Harrisburg Avenue, which is zoned light industrial, is in neighboring Mount Joy Township, does not diminish the effects it had on [Objectors'] property.[2]

Unlike the situations in Schubach [v. Zoning Board of Adjustment (Philadelphia)] and [Oravets] Appeal, the record in the present case establishes that the rezoning is consistent with the comprehensive plan and there are reasons that Wenger's proposed expansion would not be appropriate elsewhere. … [T]he rezoned [properties] [are] within the Urban Growth Area of the [Regional Strategic Plan for Elizabethtown Borough and Conoy, Mount Joy, and the Township]. Such designations identify areas

---

[10] We also distinguish this case from Schneider v. Calabrese, 291 A.2d 326 (Pa. Cmwlth. 1972), cited by Objectors. There, a local governing body rezoned a single lot from R-1 low density residential to R-3 high density residential, creating an island of high density residential use in an area zoned entirely for low density residential use that consisted of single-family dwellings. This Court explained that, "[i]n the absence of evidence of either a necessity for the rezoning or of relevant differentiating facts between the 'island' and the land immediately adjacent thereto, this rezoning was illegal." Id. at 333 (citation omitted).

Unlike in Schneider, the rezoning at issue here, which changed the zoning classification of the rezoned properties from commercial to industrial, did not create an island. As set forth above, the properties to the north and west of the rezoned properties were already zoned industrial. Additionally, the fact-finder here provided an explanation as to the necessity for the rezoning as well as an explanation as to why the rezoned properties were not being treated unjustifiably different from similar surrounding land. Therefore, Schneider is inapposite here.

within a municipality that are appropriate for development based on existing or proposed infrastructure and attempt to direct development into those areas in order to protect rural and agricultural areas from development. [F.F. Nos. 37-38]. The ZHB found that the area around the rezoned [properties] has adequate infrastructure to support industrial uses. The [Regional Strategic Plan] provides that 'creating and expanding the allowance of ag-related businesses in appropriate zoning districts' is a priority. [F.F. No. 40]. Supporting the agricultural community and related services is also a key element of Lancaster County's Comprehensive Plan, [F.F. No. 39], and the ZHB made specific findings as to how Wenger's business served the agricultural community, [F.F. Nos. 41-45]. While [Objectors] assert that 'appropriate zoning districts' should be read as referring to appropriate pre-existing zoning districts because the Township Plan does not suggest that creating new districts for ag-related businesses is a Township priority, … they point to nothing in the Plan or the [zoning] ordinance supporting that position.

[Objectors'] argument that impermissible spot zoning is demonstrated by the fact that only property belonging to Wenger's was rezoned at Wenger's request and, presumably, to Wenger's benefit is unpersuasive. The zoning amendment must stand or fall on its own terms and even strenuous lobbying by its main supporter will not itself invalidate the amendment. See [Plaxton, 986 A.2d at 210]. …

Every case should be evaluated on the totality of its facts as guided by the law. [Sharp (citing Mulac Appeal, 210 A.2d 275 (Pa. 1965))]. Based on the record and the applicable law, the rezoning of Wenger's tracts is not spot zoning. It is true that the line of demarcation must be fixed somewhere. … That [Objectors] ultimately disapprove of where that line is fixed, however, does not mean the ordinance is invalid. 'A zoning ordinance is not invalid merely because the supervisors might have made a better choice in the location of a district boundary.' [Ethan-Michael, 918 A.2d at 210 (citation omitted)]. Under the circumstances presented here, the Court concludes that

31

[Objectors] have not demonstrated that the rezoning of the tracts in question constitutes impermissible spot zoning.

> [FN2] The MPC provides for joint municipal planning, [see Sections 1101-1107 of the MPC, as amended, 53 P.S. §§11101-11107], and [Elizabethtown Borough and Conoy, Mount Joy, and West Donegal Townships] … have a joint [Regional Strategic Plan. http://www.wdtwp.com/site/2102wdtw/Regional_Strategic_Plan.pdf (last visited June 6, 2018).] [T]he ZHB took notice [without objection, see R.R. at 143a-44a,] of the Regional Strategic Plan for Elizabethtown Borough, Conoy, Mount Joy and West Donegal Townships, [see F.F. No. 27]. It is logical for uses on one side of a boundary between townships to be consistent with those on the opposite side, especially where a use on one side is an extension or expansion of an existing use on the other, and it is logical for the ZHB to take the industrial development to the north into account. Were Wenger's to be prevented from expanding its operations onto property it already owned adjacent to that existing operation, it might be compelled to relocate the expanded operation to other property which could have adverse implications for the municipal planning in both townships, especially as the only parcels of land large enough to accommodate the operation without affecting residential uses would likely be agricultural land. The [zoning ordinance] explicitly states that protection and preservation of agricultural land are among the purposes and objectives of the ordinance, (see [z]oning [o]rdinance §§ 240-2, 240-3), and the ZHB found the zoning amendment to be consistent with the comprehensive plans of both the Township and [the] County, [F.F. No. 46].

Tr. Ct., Slip Op., 9/15/17, at 6-11.[11]

For all of the above reasons, Objectors' spot zoning challenge fails.

## B. Substantive Due Process
### 1. Contentions

Objectors next assert that, pursuant to Section 916.1(b) of the MPC: "Persons aggrieved by a use or development permitted on the land of another by an ordinance" are permitted to challenge the ordinance's validity on substantive grounds. 53 P.S. §10916.1(b). Objectors acknowledge that courts have no power to interfere with a municipality's legislative process and the decision to grant or deny

___

[11] In a footnote, Objectors contend, the fact that Wenger's property across Harrisburg Avenue is zoned light industrial is irrelevant to a spot zoning analysis as that property is located in another municipality, and the ZHB cannot consider zoning matters outside the Township. See Schubach v. Zoning Bd. of Adjustment (Phila.), 270 A.2d 397 (Pa. 1970); In re Appeal from Fayette County Ordinance No. 83-2 (Oravets Appeal), 509 A.2d 1342 (Pa. Cmwlth. 1986); Schneider; see also Susquehanna Rheems Holdings v. Mount Joy Twp. Zoning Bd., No. CI-15-08440 (C.P. Lancaster Oct. 6, 2016).

Neither Schubach v. Zoning Board of Adjustment (Philadelphia), Oravets Appeal, nor Schneider support Objectors' assertion. Further, Susquehanna Rheems Holdings, the trial court decision cited by Objectors, does not support their position. Rather, the trial court there made the statement in *dicta* in the context of an appeal from the grant of variances, not in the context of a validity or spot zoning challenge such as that at issue here.

Of further note, as explained throughout this opinion, the ZHB here took administrative notice (without objection) of the Regional Strategic Plan for Elizabethtown Borough, Conoy Township, Mount Joy Township and West Donegal Township, which serves as the regional comprehensive plan for these municipalities. As such, no error is apparent in the ZHB's consideration of the fact that Wenger's existing feed mill lies within a light industrial district in neighboring Mount Joy Township. See, e.g., Section 916.1(h) of the MPC, added by the Act of December 21, 1988, P.L. 1329, as amended, 53 P.S. §10916.1(h) (Where municipalities have adopted a multimunicipal comprehensive plan pursuant to Article XI but have not adopted a joint municipal ordinance pursuant to Article VIII-A and all municipalities participating in the multimunicipal comprehensive plan have adopted and are administering zoning ordinances generally consistent with the provisions of the multimunicipal comprehensive plan and a challenge is brought to the validity of a zoning ordinance of a participating municipality involving a proposed use, then the zoning hearing board "shall consider the availability of uses under zoning ordinances within the municipalities participating in the multimunicipal comprehensive plan within a reasonable geographic area and shall not limit its consideration to the application of the zoning ordinance on the municipality whose zoning ordinance is being challenged.") (Emphasis added).

33

an application for rezoning is not subject to direct judicial review. See Section 909.1 of the MPC. However, once a rezoning occurs, an ordinance's validity can be challenged pursuant to the procedures set forth in Section 909.1 of the MPC.

Objectors maintain that, in reviewing an ordinance to determine its validity, courts must generally employ a substantive due process analysis, involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power. Penn Street. Objectors point out that, for a zoning ordinance to be found invalid, its lack of a rational relationship to the public health, safety, morals or general welfare must be obvious. Zangrilli v. Zoning Hearing Bd. of Borough of Dormont, 692 A.2d 656 (Pa. Cmwlth. 1997). They argue that a substantive due process analysis involves balancing the public interest served by the zoning ordinance against the confiscatory or exclusionary impact on individual rights. Penn Street. Therefore, Objectors contend the function of this Court's review of the validity of the zoning amendment is to engage in a meaningful inquiry into the reasonableness of the amendment in light of the interests of neighboring property owners.

Moreover, Objectors maintain, a court must set aside a ZHB's decision regarding validity of an ordinance if the ZHB's findings are not supported by substantial evidence, or if the ZHB committed an error of law or abused its discretion. In re Realen Valley Forge Greenes Assocs., 838 A.2d 718 (Pa. 2003); Valley View Civic Ass'n v. Zoning Bd. of Adjustment, 462 A.2d 637 (Pa. 1983); Aldridge v. Jackson Twp., 983 A.2d 247 (Pa. Cmwlth. 2009).

Objectors point out that Sections 240-3(B) and (E) of the zoning ordinance state that the Township's community development objectives are to "provide an attractive, safe, healthful environment," and to "encourage a harmonious relationship among the various types of land use." R.R. at 231a. Similarly, Section 604(1) of the MPC states that the provisions of a municipality's zoning ordinance shall "promote, protect and facilitate the public health, safety, morals, and the general welfare." 53 P.S. §10604(1).

Here, Objectors argue, the record lacks evidence that the rezoning has any substantial relation to protecting or facilitating the public health, safety, morals and general welfare. Further, they assert, the ZHB's findings do not establish that the rezoning will provide an attractive, safe, healthful environment, or encourage a harmonious relationship among various types of land uses as required by the zoning ordinance. To the contrary, Objectors contend the record shows the rezoning will only benefit Wenger's private interests to the detriment of the health, safety and welfare of the 80 senior citizens residing at Objectors' nursing home, as well as individuals living in the single-family residences immediately surrounding the newly created industrial zone. Objectors maintain that placing an industrial zone in the backyard of a densely populated nursing home and in close proximity to many other residential dwellings is the antithesis of a harmonious relationship between land uses.

Objectors further note that, in support of its decision denying Objectors' challenge to the zoning amendment, the ZHB found: "The Township Comprehensive Plan … identifies as a priority creating and expanding 'the allowance of ag-related businesses in appropriate zoning districts.' Township

35

Comprehensive Plan at p. 105." F.F. No. 40. Although the Township Comprehensive Plan encourages creating and expanding ag-related business in "appropriate" zoning districts, Objectors argue, the Plan does not suggest that creating entirely new zoning districts for ag-related businesses is a Township priority. Id. Thus, they assert, this finding does not support the ZHB's decision.

In addition, Objectors contend, the ZHB found: "A key element of the [County] Comprehensive Plan is to support the agricultural community and related services. Ex. T-16." F.F. No. 39. Objectors maintain that, although the County Plan advocates supporting the agricultural community, it does not advocate selectively rezoning a small parcel for agricultural/industrial use nor does it support the ZHB's decision here.

Although there is no record evidence regarding any positive impact of the rezoning on the health, safety, or welfare of the community, Objectors argue, they presented substantial evidence as to the adverse impact the rezoning would have on the health, safety and welfare of the community. To that end, Objectors assert, they presented the testimony of their Expert and submitted his report. They contend their Expert's testimony and report provide insight into the negative impacts to be expected by the nursing home's residents with the industrial use of the rezoned properties.

In particular, Objectors maintain, in October 2015, their Expert analyzed air quality readings and noise levels in the immediate vicinity of the nursing home and in the immediate vicinity of the feed mill property. R.R. at 95a, 396a. Objectors argue their Expert testified that air quality readings collected at the nursing

home revealed approximately 50 micrograms of particulates per cubic meter of air with occasional peaks of up to 200 micrograms per cubic meter. However, they assert, air quality readings collected at the feed mill property over 100 yards away revealed peaks of 600 to 800 micrograms of particulates per cubic meter of air. R.R. at 67a. As a result, Objectors contend their Expert's testimony supports the argument that the air quality at Objectors' nursing home will be adversely affected by the zoning amendment if Wenger's feed mill operations are conducted within 60 feet of the nursing home.

Further, Objectors maintain their Expert testified that the background noise levels at the feed mill property ranged from 70 to 90 decibels as compared to 55 to 58 decibels at the nursing home. R.R. at 68a, 397a. Objectors argue their Expert explained that a 10-decibel noise increase basically doubles the human ear's sensation of loudness. R.R. at 68a. Thus, Objectors assert their Expert's testimony establishes that the noise levels at the nursing home will be significantly increased as a result of the zoning amendment if feed mill operations are moved within 60 feet of the nursing home.

Objectors contend the ZHB erred in dismissing Objectors' Expert's entire testimony as not credible or probative because his opinions did not consider the zoning ordinance's industrial performance standards procedures. F.F. No. 51. They argue their Expert's findings regarding noise and air pollution are probative and credible, and the ZHB abused its discretion by rejecting his testimony solely based on Objectors' Expert's failure to review the industrial performance standards before testifying.

Objectors contend they also presented the testimony of Jennifer Ginder, the nursing home's administrator, who is a registered nurse and a licensed nursing home administrator. R.R. at 114a. They argue the ZHB recognized Ginder as an expert in the general health of the nursing home's residents. R.R. at 119a-20a. Objectors maintain Ginder testified that many of the nursing home residents suffer from respiratory conditions. R.R. at 122a. They argue Ginder expressed "serious concerns" regarding the health of the nursing home residents as a result of the zoning amendment. R.R. at 120a-21a. Objectors assert Ginder's concerns included adverse health impacts caused by grain dust, R.R. at 121a-22a, diesel fumes, id., noise, R.R. at 122a, and visual and light pollution, R.R. at 122a-23a, from the rezoned properties.

In addition, Objectors contend, Ginder raised concerns as to the dangers faced by nursing home residents walking in the neighborhood because of anticipated heavy truck traffic directly across the alley from the nursing home. R.R. at 123a. Objectors maintain the ZHB disregarded Ginder's expert testimony and failed to even mention her testimony in its findings. They argue the ZHB erred and abused its discretion by failing to consider Ginder's probative and credible testimony as to the impact of the rezoning on the health, safety and welfare of the nursing home's residents.

Objectors further assert, although the ZHB found Wenger's buys grain from and provides feed to a large number of farmers in the Township and the County, and, therefore supports the "agricultural community[,]" F.F. No. 44, the ZHB's findings do not explain how the rezoning, which will allow Wenger's to expand its

feed mill operation, will benefit these farmers or the agricultural community. Instead, the ZHB focused on the positive impact the rezoning will have on Wenger's personal interests in expanding its operation. F.F. No. 45.

Objectors contend the ZHB also erred by exclusively considering how the zoning amendment impacts the "agricultural community" given that this community is not located in the neighborhood surrounding the rezoned properties. In fact, they argue, according to the testimony of Wenger's Chief Operating Officer, the agricultural community that would benefit from the rezoning is located up to 100 miles away from the rezoned properties and partially outside the confines of the Township and the County. R.R. at 150a. Objectors maintain the effect of the zoning amendment on Wenger's private interests or the interests of farmers outside the Township and the County cannot support the ZHB's decision to uphold the validity of the zoning amendment. Instead, they argue, the ZHB should have focused on how the rezoning will impact the health, safety and welfare of the neighborhood surrounding the rezoned properties which, while zoned commercial, is primarily residential in character. R.R. at 428a; F.F. No. 32.

Finally, Objectors point out, the ZHB concluded: "Because all industrial uses on the [r]ezoned [p]roperties will have to meet stringent performance standards before any use is approved, the [ZHB] finds that the health, safety and welfare of the community will be adequately safeguarded." Concl. of Law No. 18. Objectors contend this conclusion is an error of law and an abuse of discretion as it is not based on substantial evidence. Objectors argue there is no record evidence as to how the Township's performance standards will protect the health, safety and

39

welfare of the community. They assert the ZHB should not be permitted to disregard credible testimony, *i.e.* that of Objectors' Expert and Ginder, regarding the adverse impact of the rezoning on the health, safety and welfare of the community by relying on written performance standards that have no immediate application to the challenge at issue. Objectors maintain that creating an industrial zone a short distance from a nursing home, with all the attendant risks associated with the industrial use, is *per se* irrational; therefore, this Court should invalidate the zoning amendment.

## 2. Analysis

Zoning ordinances are presumed to be valid. Penn Street. Those who challenge their validity carry a heavy burden to establish their invalidity. Fisher v. Viola, 789 A.2d 782 (Pa. Cmwlth. 2001). Moreover, if the validity of an ordinance is debatable, the legislative judgment of the governing body must control. Id. A zoning ordinance's constitutionality is reviewed under a substantive due process analysis. Id. "Under such analysis, the zoning ordinance is considered constitutional as a valid exercise of police power, when it promotes public health, safety and welfare and is substantially related to the purpose it purports to serve." Id. at 785 (citation omitted). The party challenging the constitutionality of a zoning provision must establish it is arbitrary, unreasonable and unrelated to the public health, safety, morals and general welfare. Penn Street. Further, "[w]here there exists a need for specific development in the community, rezoning for that purpose has substantial relation to the public health, safety, morals and general welfare of the community." Sharp, 628 A.2d at 1229 (citing Schubach v. Silver).

Here, to the extent Objectors attempt to shift the burden to the Township to prove the validity of the zoning amendment, Objectors' arguments fail. Objectors bore the burden of showing that the zoning amendment was arbitrary, unreasonable and unrelated to public health, safety, morals and general welfare. Id. The ZHB determined Objectors failed to carry this heavy burden. Concl. of Law No. 20. No error is apparent in that determination.

More specifically, the primary evidence Objectors presented in support of their claims that the rezoning would adversely affect the health, safety, and welfare of their nursing home residents was the testimony by Objectors' Expert, a civil engineer, who prepared a report and testified at the ZHB hearing. The ZHB permitted Objectors' Expert to testify as an expert despite a challenge to his qualifications by the Township Solicitor based on his lack of certification by the American Institute of Certified Planners, the fact that he authored no comprehensive plans or zoning ordinances, and that his firm's services were in the telecommunications, environmental, and geothermal fields rather than in land planning. R.R. at 51a-54a, 56a.

Objectors' Expert analyzed air quality readings and noise levels taken in the vicinity of both Objectors' nursing home and the feed mill property about a week before the hearing. R.R. at 396a. He opined that the air quality, noise and vibration levels at Objectors' nursing home would be adversely affected by the expansion of Wenger's mill onto the rezoned properties. R.R. at 66a-70a, 77a-78a. Nevertheless, on cross-examination, Objectors' Expert acknowledged he did not consider the zoning ordinance's industrial performance standards procedures in

41

preparing his testimony.[12]  R.R. at 91a-92a.  Objectors' Expert also conceded he did not personally take the readings he relied on, R.R. at 92a-93a, and he was unaware of what might have been occurring at other industrial facilities or the nearby quarry at the time the readings were taken.  R.R. at 93a-94a.  Observing that any industrial use proposed for the rezoned properties would be required to comply with the zoning ordinance's detailed industrial performance standards, the ZHB rejected Objectors' Expert's testimony in its entirety, finding it lacked credibility based on his failure to consider the performance standards.  F.F. Nos. 50-52.

Objectors assert the rejection of their Expert's testimony constitutes an error of law and an abuse of discretion.  Contrary to this assertion, "the [ZHB], as fact-finder, is the sole judge of credibility."  Marshall v. City of Phila., 97 A.3d 323, 331 (Pa. 2014).  The ZHB is free to reject even uncontradicted testimony it finds lacking in credibility, including expert testimony.  Taliaferro.  A reviewing court may not substitute its interpretation of evidence for that of the ZHB.  Id. Assuming the record reveals the existence of substantial evidence, this Court is bound by the ZHB's findings that are the result of resolutions of credibility and conflicting

_____

[12] The zoning ordinance's industrial performance standards procedures are intended to protect the health, safety, and welfare of Township residents through the regulation of noise, vibration, particulate emissions and other items that can cause danger to public health and welfare if not handled properly.  Section 240-107(B) of the zoning ordinance.  The standards set forth the minimum standards to be met and maintained by all industrial uses in the Township.  Section 240-107(C)(1) of the zoning ordinance.  Further, if the zoning officer believes a proposed use would create detrimental conditions, he is required to refer the proposed use to the ZHB for approval as a special exception, and the ZHB must require assurances that the detrimental conditions will be eliminated.  Section 240-107(A)(2) of the zoning ordinance. Additionally, continuous or frequent violations of the performance standards will result in suspension or revocation of an occupancy permit for the use.  Section 240-107(A)(4) of the zoning ordinance.  The zoning ordinance also imposes general performance standards for non-residential uses relating to lighting and visual screening.  Section 240-114(A), (C) of the zoning ordinance.

testimony rather than a capricious disregard of evidence. Id. Applying these principles here, the trial court observed:

> Nothing in the record indicates that the rejection of [Objectors' Expert's] testimony was other than a matter of credibility. In failing to take the performance standards into account as well as his lack of knowledge of the effect that other industrial uses in the area may have had on tests run by his firm, his testimony on the effects of Wenger's expansion onto the rezoned propert[ies] could properly be seen as lacking credibility.

Tr. Ct., Slip Op., at 14.

Objectors further argue the ZHB erred in ignoring the testimony of Ginder, the nursing home's administrator, who was qualified as an expert as to the general health of the nursing home's residents. R.R. at 119a-120a. While Objectors are correct that the ZHB did not expressly mention Ginder by name in its opinion, our review of the ZHB's opinion as a whole reveals the ZHB did consider the substance of Ginder's testimony and specifically addressed various points she raised.

Thus, prior to Ginder's testimony, there was a discussion regarding whether her testimony would be relevant because the issue before the ZHB concerned a validity challenge to an industrial use zoning classification, which was beyond her expertise. R.R. at 115a-17a. Ultimately, in light of the relaxed evidentiary rules at a zoning board hearing, the ZHB permitted Ginder to testify, indicating it would afford the appropriate weight to her testimony. R.R. at 117a-120a. Ginder testified generally as to dust and noise at the nursing home facility presently. R.R. at 121a-22a. The ZHB recognized that the nursing home is "located in an area … which presently generates noise, vibration, dust and traffic typically

43

associated with heavier industrial uses." F.F. No. 35. Ginder also stated, "I have residents that have chronic obstructive pulmonary disease, that have asthma, that have emphysema … [a]nd you're putting more potential pollutants in the air that much closer to this building." R.R. at 122a. However, on cross-examination Ginder conceded she was unfamiliar with the zoning ordinance's industrial performance standards procedures and was unaware of what type of safety or environmental equipment Wenger's would have to install in a facility built on the rezoned properties. R.R. at 133a-34a. As set forth in greater detail above, see footnote 8, these industrial performance standards are expressly intended to protect the health, safety, and welfare of Township residents, F.F. No. 48, and comprehensively regulate, among other things, noise, vibration, and dust. F.F. Nos. 47, 49.

In addition, much of Ginder's testimony related to concerns about specific aspects of the sketch plan Wenger's submitted to the zoning officer. In her testimony, Ginder did not address the issue of whether a reclassification of the rezoned properties to industrial, which would allow for uses such as facilities for manufacturing, processing, fabricating and assembly, parking lots, laboratories, municipal uses, and wholesale storage facilities, was permissible. See Section 240-69 of the zoning ordinance. As to Wenger's sketch plan, the ZHB stated it satisfied the limited purpose of Section 916.2 of the MPC. F.F. No. 63. That Section states that such plans are only to advance the date for any challenge to a zoning ordinance and "shall not be required to meet the standards prescribed for preliminary, tentative or final approval or for the issuance of a building permit so long as they provide reasonable notice of the proposed use or development and a sufficient basis for a preliminary opinion as to its compliance." 53 P.S. §10916.2(1) (emphasis added).

Thus, "those aspects of Ginder's testimony [that related to the specific components of Wenger's plan for the rezoned properties] were premature, speculative and irrelevant with respect to the specific issue before the ZHB." Tr. Ct., Slip Op., at 16.

Further, as the trial court observed, it is clear from both the record and their brief to this Court that Objectors take a rather narrow view of the relevant community. In particular, Objectors assert the rezoning at issue here is to the detriment of the health, safety and welfare of the 80 senior citizens residing at Objectors' nursing home, as well as those individuals living in residences near the newly created industrial zone. Appellants' Br. at 21. Contrary to Objectors' assertions, however, in Shubach v. Silver, our Supreme Court instructed that a broader view of the relevant "community" was appropriate, stating:

> [T]he record also supports the chancellor's finding that there exists a need in the particular community[20] for such a facility [(a nursing home facility for handicapped children, which was the use permitted as a result of the challenged rezoning)] hence, [the facility] does have a substantial relation to the public health, safety, morals and general welfare of the particular community.
> > [FN. 20] The particular community would, at the very least, be Northeast Philadelphia. This is the land area the chancellor employed. A court cannot take too narrow a view of a community, otherwise this element could be used as a weapon to keep out certain types of structures; hence, it could improperly be used as a tool to promote exclusionary zoning ….

336 A.2d at 338 n.20 (emphasis added) (citations omitted).

Taking a broader view of the relevant community here, as our Supreme Court deemed appropriate in Schubach v. Silver, the ZHB determined the rezoning at issue here benefits the Township as a whole as well as the agricultural community. Both the MPC and the zoning ordinance recognize the importance of protecting and preserving agricultural land. See Section 105 of the MPC, 53 P.S. §10105; Sections 240-2, 240-3(A), (C) of the zoning ordinance. Indeed, Section 105 of the MPC lists among the purposes of the statute, "to promote the preservation of this Commonwealth's natural … resources and prime agricultural land[,]" "to encourage the preservation of prime agricultural land and natural … resources through … rezoning[,]" and "to ensure that municipalities enact zoning ordinances that facilitate the present and future economic viability of existing agricultural operations in this Commonwealth and do not prevent or impede the owner or operator's need to change or expand their operations in the future in order to remain viable[.]"

Here, the ZHB expressly found that: (1) the Township Comprehensive Plan identifies as a priority creating and expanding "'the allowance of ag-related businesses in appropriate zoning districts.' Township Comprehensive Plan at p. 105[,]"[13] F.F. No. 40; (2) the agricultural community relies on feed mills to buy grain grown by farmers and also to provide feed to farmers for their livestock, F.F. No. 41; R.R. at 149a-50a; (3) in order for the agricultural community to survive and flourish, adequate land must be appropriately zoned to allow for associated agricultural support services and industries, including feed mills, F.F. No. 42; O.R. Item #9, Ex. T-16; (4) Wenger's has been in operation for over 70 years and buys

---

[13] http://www.wdtwp.com/site/2102wdtw/Regional_Strategic_Plan.pdf (last visited June 6, 2018).

grain from and provides feed to a large number of farmers in the Township and throughout Lancaster County, F.F. No. 43; R.R. at 149a-50a; (5) Wenger's operation directly supports the agricultural community, F.F. No. 44; R.R. at 149a-50a;[14] and (6) changing the zoning on the rezoned properties from commercial to industrial to allow Wenger's to expand its feed mill operation is consistent with the goals and objectives of the County's and Township's Comprehensive Plans, both of which call for supporting agricultural uses and agricultural related businesses, F.F. No. 45; O.R. Item #9, Exs. T-6, T-16.

---

[14] To that end, Grant S. Markley, Wenger's Chief Operating Officer, testified as follows:

Q. … [C]an you just give just a brief description of Wenger's Feed Mill, who it serves and what it buys and what it sells?

A. It has been a feed mill there for over a hundred years. It's been Wenger's Feed since 1944, quite a while.

We have expanded a few times as well over those years. We serve primarily the local community. We buy grain, and that's part of what we're talking about this evening. We buy grain from local farmers, probably about 70 farms that we receive grain from within the local area. And we have lots of poultry and swine farms in the area, as well, as I'm sure you know. So we also sell feed.

So we receive the grain, process it, and sell feed to probably more than 70 farms. There's quite a few farms in the area that we serve. That area is actually broader than just Lancaster County. It's probably about a hundred miles out that we serve.

Q. And do you believe you're an important resource for agriculture in West Donegal Township?
A. I do, yes.

R.R. at 149a-50a (emphasis added).

47

Further, although the specific reason for the rezoning was to allow Wenger's to expand its feed mill, Objectors' arguments focus heavily on Wenger's proposed plan for the rezoned properties rather than on the zoning amendment itself. However, the issue before this Court is not the zoning officer's opinion approving Wenger's sketch plan for any feed mill expansion.[15] As indicated above, the ZHB determined the plan was submitted "for the sole purpose of advancing the date for which a challenge to the zoning [amendment] could run." Concl. of Law No. 26. Further, the ZHB expressly determined it was unnecessary to render a conclusion that the sketch plan met all the technical requirements of the zoning ordinance, Concl. of Law No. 27, and any plan ultimately submitted and approved for construction would have to satisfy, among other things, the zoning ordinance's detailed industrial performance standards procedures. See Section 240-107 of the zoning ordinance. While Objectors take issue with the ZHB's reliance on those standards, Markley, Wenger's Chief Operating Officer, acknowledged that Wenger's proposed use of the rezoned properties would be required to comply with those standards, and that Wenger's would do so. R.R. at 151a.

Thus, the only issue was whether the rezoning of Wenger's tracts from commercial to industrial was improper. On that issue, Objectors did not present credible evidence to rebut the presumption of validity and to show that changing the zoning classification of the rezoned properties from commercial to industrial was unreasonable, arbitrary or not substantially related to the promotion of the public

---

[15] Although Objectors' land use appeal to the trial court requested that the trial court reverse the ZHB's decision and rule that the zoning amendment was invalid or, alternatively, that the zoning officer's preliminary opinion was invalid, Objectors did not brief this latter point or raise it at oral argument. As such, the trial court deemed this issue waived. In their brief to this Court, Objectors do not challenge the trial court's determination that they waived this issue.

health, safety, and welfare. <u>See</u> <u>Penn Street</u>. Consequently, as the trial court stated, it was not "insensitive to [Objectors'] concerns, but this is neither the proper time nor forum for addressing what any expansion of Wenger's feed mill might look like." Tr. Ct., Slip Op., at 18.

As such, no error is apparent in the ZHB's rejection of Objectors' substantive due process challenge to the zoning amendment.

## IV. Conclusion

Accordingly, we affirm the trial court's opinion and order affirming the ZHB's decision denying Objectors' spot zoning and substantive validity challenges to the zoning amendment.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susquehanna Rheems Holdings, :
LLC; 155 Broad Street, LLC :
and Rheems Operator, LLC, :
               Appellants :
                :
         v. : No. 1394 C.D. 2017
                :
West Donegal Township :
Zoning Hearing Board :
                :
Wenger's Feed Mill, Inc. and :
West Donegal Township :

# **O R D E R**

**AND NOW**, this 23rd day of July, 2018, the order of the Court of Common Pleas of Lancaster County is **AFFIRMED**.

 

                                              _____
                                              ROBERT SIMPSON, Judge